113 So.2d 680

**CENTRAL MUTUAL INSURANCE CO.**

v.

**E. C. ROYAL et al.**

7 Div. 416.

Supreme Court of Alabama.

June 25, 1959.

Mead & Norman and Marshall H. Fitzpatrick, Birmingham, for appellant.

Clarence Simmons, Jr., and Ollie W. Nabors, Gadsden, for appellees.

STAKELY, Justice.

This is an appeal from the judgment ·of the lower court on a policy of insurance issued by Central Mutual Insurance Company, a corporation (appellant), in favor of E. C. Royal and Mamie I. Royal and East Gadsden Bank, a corporation (appellees), insuring a house owned by E. C. Royal and Mamie I. Royal and mortgaged to The East· Gadsden Bank, a corporation, one of the appellees.

The policy insured against loss or injury by fire and a number of other perils named in the policy. The hazard in question in this case is alleged to be "collapse of the house or a part thereof."

The verdict of the jury and the judgment of the court thereon was in favor of the appellees in the amount of $1,200. Motion for a new trial was overruled and this appeal followed.

The case was tried on Counts 2 and 3, which appear to claim damages to the insured dwelling resulting from a collapse of a part thereof. The pleading was in short by consent.

Reversal is sought here on a number of rulings on the pleadings, the action of the court with reference to certain charges and the action of the court in overruling the motion for new trial.

The policy was in the basic amount of $15,000 and contained in pertinent part the following provision:

> "This policy insures against all direct loss to the property covered caused by: Collapse of building or any part thereof."

E. C. Royal and his wife were residing at 305 Hardin Circle, East Gadsden, in June and September, 1956. E. C. Royal testified that they heard a racket that sounded like something had fallen and broken in the house. About two weeks later it was noticed that the walls of the house had cracked on the west end, east end and on the north end. The inside walls of the house were also cracked. The foundation was broken so that you could, according to the witness, put your finger in it in places. The foundation was concrete poured in the ground.

A number of witnesses testified that there were cracks in the walls of the house and in the foundation of the house and it appeared that segments of the wall had sunk or dropped. The house was repaired and this suit is to cover the cost of the repair work.

There was no proof that the house had fallen down or caved in.

It is insisted by the appellant that there was no collapse of the house or any part thereof within the meaning of the policy.

There appears to be little law on the question here involved. Collapse of a building or any part thereof seems to be a clear and unambiguous statement and we find ourselves unable to agree that the proof showed a collapse of the house or any part thereof.

The plain and ordinary sense of the word collapse cannot be so altered or warped to include within its meaning a movement of a structural part of a building as is sought to be done in the case at bar. We find only one case by an appellate court in this country which seems to be analogous to the case at bar. This is the case of Nugent v. General Insurance Co. of America, 8 Cir., 253 F.2d 800.

Just as in the present case, the plaintiff in the Nugent case showed that cracks had been discovered in the walls of the insured house. These cracks extended through the entire wall, from the outside to the inside. Cracks were also found in the basement

floor and there was a displacement of a half inch in the two margins of the cracked surfaces. The house moved or settled toward the northeast. In the present case the evidence showed the Royal residence had moved or settled. In other words the facts in the Nugent case appear to be almost identical with the case at bar.

The Circuit Court of Appeals in the Nugent case upheld the findings of the District Court for the Eastern District of Missouri that the policy provision exactly similar to the provision involved in the instant case did not cover damage caused by such movement or sinking of the building footings and that such settling or sinking of the footings did not constitute a collapse of part of the building.

There seems to be no doubt about the meaning of the word "collapse". The plaintiff in the case of Skelly v. Fidelity & Casualty Co. of New York, 313 Pa. 202, 169 A. 78, contended that the word was ambiguous and so should be construed to grant coverage to the insured in a doubtful case. In that case the life insurance policy sued on contained a double liability clause should the insured sustain death "in consequence of the collapse of the outer walls of a building while the assured is therein." A railroad car got out of control and ran through the walls of the building in which the insured was located, causing the insured to be struck by portions of the wall and killed. In disposing of the plaintiff's contention that this unfortunate incident fell within the coverage of the policy, the court said:

"The argument of the appellant proceeds upon the idea that the word 'collapse' as used in the policy is doubtful in meaning and capable of two interpretations. Such, however, is not the fact. It is not doubtful of meaning or capable of two interpretations so far as the incidents are concerned which it is sought to make it cover, because it does not cover them at all. Where there is no ambiguity, the court must construe the language of a policy in accordance with the plain, ordinary meaning of its terms. In 2 Words and Phrases, First Series, page 1248,* it is said: 'Webster defines "collapse" thus: "To fall together suddenly, as the two sides of a hollow vessel; to close by falling or shrinking together; to shrink up, as a tube in a steam boiler collapses." * * The Century Dictionary defines "collapse" thus: "To fall together, or into an irregular mass or flattened form, through the loss of firm connection or rigidity and support of the parts or loss of the contents, as a building through the falling in of its sides, or an inflated bladder from escape of the air contained in it." ' * * * In our view, the language of the policy is clear and unambiguous, and the words 'collapse of the outer walls of the building' used in it could not be held to cover such an accident as that with which we are dealing, a runaway railroad car penetrating through the walls."

In 14 C.J.S. p. 1316 the word "collapse" is defined as follows:

"To break down or fail abruptly and utterly, to cave in; to close by falling or shrinking together, to fall together, or into an irregular mass or flattened form, through loss of firm connection or rigidity and support of the parts or loss of the contents, as a building through the falling in of its sides, or an inflated bladder from escape of the air contained in it, or to fall together suddenly, as the two sides of a hollow vessel; to go to pieces; and to shrink up; as, a tube in a steam boiler collapses. * * * ."

In the case of Rubenstein v. Fireman's Fund Insurance Co., 339 Ill.App. 404, 90 N.E.2d 289, 291, the court had under consideration a policy of insurance covering against damage to personal property caused

---

* See 7A Words and Phrases, Collapse, p. 137.

by the collapse of a portion of a ceiling. The court said:

"In the cases wherein the peril 'collapse of building' has been construed by the courts in various types of policies of insurance, it has been held that the entire building must lose its distinctive character as a building before there is a collapse of the building within the terms of the policy. In Teutonia Insurance Co. v. Bonner, 81 Ill.App. 231, a well-built two-story frame dwelling resting on a foundation of wooden blocks was blown over on its side and off the foundation during a high windstorm. The court held that there was not a fall of a building or any part thereof, stating, 81 Ill.App. at page 236: 'In the text books on insurance, wherever we find the expression "fallen buildings" or any equivalent expression, it appears that the writer had in mind a building that had fallen "in pieces," "collapsed," or in some form become a "mere ruin," "mass of rubbish," or "a congeries of materials;" that it had become in such condition that it "could not be repaired and still be the same building".' * * *."

When the language of an insurance policy is clear and unambiguous it must be construed as it reads. The courts are not at liberty to raise doubts where none exist or to make a new contract for the parties. Life & Casualty Ins. Co. of Tennessee v. Bottoms, 225 Ala. 382, 143 So. 574; Pacific Mutual Life Ins. Co. of California v. Strange, 226 Ala. 98, 145 So. 425; Chemstrand Corp. v. Maryland Casualty Co., 266 Ala. 626, 98 So.2d 1.

We find from the authorities dealing with the word "collapse" or "collapse of a building", as used in various policies of insurance, that the meaning thereof is plain and clear without ambiguity and the contract involved in this case must be enforced as written. In the case at bar there was no collapse of the building. There was no collapse of any part of the building. Some of the walls appeared to have cracks in them and in two or more places the concrete footing contained cracks, but there was no collapse of the building within the foregoing authorities. There was no falling in, no loss of shape, no reduction to flattened form or rubble of the building or any part thereof. The building was still in its original form and condition with the exception of a few cracks. Accordingly, we do not consider that the appellant was liable under the provisions of the policy to which we have referred or that the plaintiffs were entitled to recover.

It results that the judgment of the lower court must be reversed and the cause remanded.

Reversed and remanded.

LAWSON, GOODWYN and MERRILL, JJ., concur.