127 So.2d 304 (1961)
James D. ANDERSON, Plaintiff-Appellant,
v.
INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY OF INDIANAPOLIS, INDIANA, Defendant-Appellee.
No. 9386.
Court of Appeal of Louisiana, Second Circuit.
February 2, 1961.
Rehearing Denied March 10, 1961.
Certiorari Granted April 7, 1961.
Brown, Fleniken & Dormer, Shreveport, for appellant.
Bodenheimer, Looney & Richie, Shreveport, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
GLADNEY, Judge.
This suit was instituted by plaintiff, James D. Anderson, to recover from the defendant, Indiana Lumbermens Mutual Insurance Company of Indianapolis, Indiana, for a loss claimed under a policy of insurance which includes protection against certain perils, including under Section 4, subsection N of the policy "Collapse of building(s) or any part thereof." Plaintiff's suit was met by an exception of no cause or right of action filed on behalf of the *305 defendant insurer asserting that the allegations of plaintiff's petition failed to show that the damage claimed resulted from the collapse of the insured building in whole or in part, and that in any event the cause of damage to plaintiff's dwelling is not covered by the policy, but, in fact, is expressly excluded under Section 5 thereof, providing certain limitations and exclusions to the effect: "This Company Shall Not Be Liable * * * (2) As Respects Perils * * * N * * *: For Loss caused directly or indirectly by earthquake, or other earth movements except landslides; * * *" After argument the trial judge sustained the exception, holding the damage claimed and alleged in plaintiff's petition was not one of the perils insured against in defendant's policy. From this judgment plaintiff has appealed.
Whether or not a cause of action has been stated depends upon the pleaded facts of the petition. Therein plaintiff claims that while the policy was in force and effect, damages were sustained to his home, a brick veneer building situated in Lot 4 of the Dean Terrace Subdivision, Unit No. One, in Caddo Parish, Louisiana; that such damages exceeded the policy limits of $11,600; that the construction of his house was in accordance with plans and specifications acceptable to the Federal Housing Administration; that during August, 1959, a crack appeared in the wall of the house and since that time the crack has become larger and now extends into the ceiling of the living room and cracks have appeared in the wall, at every window and door in the house, and the door frames are out of square with the doors; that the concrete slab forming the base of the floor of the house and the foundation is broken, cracked, fallen and uneven, and the tile flooring between the kitchen and back bedroom has broken apart; that on the exterior the two rear corners are lower than the center portion of the rear wall, and cracks and separations extend upward in the brick from the concrete slab to the roof lines on all sides of the house; and that due to the collapse of said building, it will be necessary to remove the brick from the exterior, to jack up the roof, to replace the concrete slab and floors, realign the joists, rafters and sills, replace the sheet rock, and repaint the exterior and interior of the building. Further, it is alleged that petitioner's lot slopes downward from the street line to the rear; that the concrete slab is on a type of clay soil which is subject to seasonable changes, particularly extreme dry and extreme wet periods; that the expansion and contraction of the soil has caused the cracking, breaking and falling of the concrete slab with the falling, cracking, breaking and unequal settlement of the building, all of which is of such a nature as to materially impair the basic structural integrity of the building; and that said loss is covered by the policy.
The question presented on the appeal is whether the trial court correctly interpreted Section 4 N of the policy insuring plaintiff against the collapse of his building or any part thereof, and Section 5(2) providing the company shall not be liable with respect to perils insured against under Section 4 N, caused directly or indirectly by earthquakes or other earth movements, except landslides. A research of the jurisprudence of this state indicates the absence of any precedent or guiding judicial pronouncement. Judicial construction of the word "collapse" as used in similar policies, received consideration in Jenkins v. United States Fire Ins. Co., 1959, 185 Kan. 665, 347 P.2d 417; Travelers Fire Ins. Co. v. Whaley, 10 Cir., 1959, 272 F.2d 288; Central Mutual Ins. Co. v. Royal, 1959, 269 Ala. 372, 113 So.2d 680, 72 A.L.R.2d 1283, and Nugent v. General Ins. Co. of America, 8 Cir., 1958, 253 F.2d 800. All of these cases presented factual situations where the evidence or proof did not indicate the structure or any part thereof had completely fallen down or caved in. The two first mentioned cases construed the word "collapse" favorably to the insured and the two last mentioned decisions concluded there was no coverage.
*306 The LSA-Civil Code of Louisiana in Section 5 of Chapter 3 of Title IV (Articles 1945-1962), under the heading "Of The Interpretation Of Agreements" has set down for the guidance of the judiciary certain sound and reasonable rules. These, inter alia, provided that: "Courts are bound to give legal effect to all * * * contracts according to the true intent of all the parties", and such "intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences." Further, "All clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act." When a clause is susceptible of two interpretations, it must be understood in that sense in which it may have some effect, rather than in a sense which would render it nugatory, (art. 1951), and only in doubtful cases will the agreement be interpreted against the party who contracted the obligation. Art. 1957. Reference to these rules of construction is frequently resorted to by our courts. Hemel v. State Farm Mutual Automobile Ins. Co., 1947, 211 La. 95, 29 So.2d 483. Another rule of law receiving universal acceptance is that all ambiguities must be construed in favor of the insured and against the insurer. In the case of Pullen v. Employers Liability Assurance Corporation, Ltd., 1956, 230 La. 867, 89 So.2d 373, the Supreme Court stated the following general rule for the interpretation of exclusion clauses appearing in contracts of insurance:
"The exclusion clause must necessarily be examined and interpreted in the light of its own design and intent, as well as in view of the objects and purposes of the policy. Once coverage has been extended, as it is quite clearly the purpose of the policy to do and as has been done here, it should be withdrawn only when exclusion is established with certainty. And because comprehensive exclusion is violative of the purpose and intent of policy coverage, exclusion must necessarily be specific and not general. It is specific, as distinguished from comprehensive, when it particularly identifies the insured or insureds intended to be excluded. The exclusion clause, as its name implies, sets forth the traits, characteristics and circumstances that mark an insured for exclusion. And the insured or insureds to be excluded must bear the marks and traits, or conform with the circumstances, described and particularized in the exclusion clause as the basis for exclusion." Id., 89 So.2d at page 377.
LSA-Civil Code, art. 1955 providing that "all clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act" appears to be a statement of the "ejusdem generis" rule of construction, concerning which Black's Law Dictionary states:
"In the construction of laws, wills, and other instruments, the `ejusdem generis rule' is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. Black, Interp. of Laws, 141; Goldsmith v. U. S., C.C.A.N.Y., 42 F.2d 133, 137; Aleksich v. Industrial Accident Fund, 116 Mont. 69 [127], 151 P.2d 1016, 1021. The rule, however, does not necessarily require that the general provision be limited in its scope to the identical things specifically named. Nor does it apply when the context manifests a contrary intention.
"The maxim `ejusdem generis', is only an illustration of the broader maxim, `noscitur a sociis'. State v. Western Union Telegraph Co., 196 Ala. 570, 72 So. 99, 100."
And, in defining the phrase, "noscitur a sociis", as used in the aforesaid definition the following explanation and definition are given:

*307 "It is known from its associates, 1 Vent. 225. The meaning of a word is or may be known from the accompanying words. 3 Term R. 87; Broom, Max. 588. Morecock v. Hood, 202 N.C. 321, 162 S.E. 730, 731; Louis Pizitz Dry Goods Co. v. Fidelity & Deposit Co. of Maryland, 223 Ala. 385, 136 So. 800, 801.
"The doctrine means that general and specific words are associated with and take color from each other, restricting general words to sense analogous to less general. Dunham v. State, 140 Fla. 754, 192 So. 324, 325, 326."
The most recent decision cited in the briefs filed herein, construing the "collapse" clause of an insurance policy, is that of Jenkins v. United States Fire Ins. Co., supra. This case, the opinion of which was written by Chief Justice Parker of the Supreme Court of Kansas, was decided after Travelers Fire Ins. Co. v. Whaley; Central Mutual Insurance Company vs. E. C. Royal, and Nugent v. General Ins. Co. of America, supra. The complaint in the Jenkins case set forth that as a result of the contracture of the earth and ground due to dryness, the basement, walls and foundation of the structure, covered by the insurance policy, expanded inward and began to bulge, crack, break and collapse. The basic issue involved was whether the insured could recover for an alleged settling, cracking and breaking of the wall of a basement in the dwelling insured, under the "collapse" clause. There was no contention therein that the basement walls had fallen, although there was evidence that a wall had settled, cracked, and bulged to the extent its condition created an unsafe and dangerous situation with the possibility of its caving or falling in. Thus, the factual situation in the Jenkins case does not differ materially from the facts alleged in plaintiff's petition herein. It was argued in the Jenkins case, as herein, that the word "collapse" as used in the policy, is unambiguous and should be construed in its plain, ordinary and usual meaning. After reviewing the decisions in the Royal, Nugent, and Whaley cases, the Kansas court elected to follow the decision in the Whaley case and rejected the abstract, narrow construction of the word "collapse" which governed the decision in the Royal case. The court said:
"When construed on the basis of intention, as required by the foregoing decision, and others therein cited, we believe the clause `collapse of building or any part thereof as used in the involved insurance contract is to be interpreted as comprehending that, if brought about by unusual and extraordinary circumstances which the parties to that agreement could not normally expect or foresee on the date of its execution, the settling", falling, cracking, bulging or breaking of the insured building or any part thereof in such manner as to materially impair the basic structure or substantial integrity of the building is to be regarded as a `collapse' of the building within the meaning of that word as used in such clause of the policy." [185 Kan. 665, 347 P.2d 423].
In the Whaley case the court, after noting that the contracts of insurance are prepared by the insurance companies, reasoned that "if the [company] intended that the word `collapse' should be ascribed the abstract dictionary definition it now contends for, it should have so stated. In the absence of such an expressed intent, we think it more realistic to define the terms in such a contract as connoting a sinking, bulging, cracking, pulling away of the wall so as to impair its function of supporting the superstructure and destroying its efficiency as a habitation." [272 F.2d 290].
In the case of Central Mutual Ins. Co. v. Royal, supra, the court followed the abstract dictionary definition of the word "collapse" and referred to the following definitions:
"`In 2 Words and Phrases, First Series, page 1248, * it is said: "Webster *308 defines `collapse' thus: `To fall together suddenly, as the two sides of a hollow vessel; to close by falling or shrinking together; to shrink up, as a tube in a steam boiler collapses.' * *
"`"The Century Dictionary defines `collapse' thus: `To fall together, or into an irregular mass or flattened form, through the loss of firm connection or rigidity and support of the parts or loss of the contents, as a building through the falling in of its sides, or an inflated bladder from escape of the air contained in it.'" * * *
"In 14 C.J.S. p. 1316 the word `collapse' is defined as follows:
"`To break down or fail abruptly and utterly, to cave in; to close by falling or shrinking together, to fall together, or into an irregular mass or flattened form, through loss of firm connection or rigidity and support of the parts or loss of the contents, as a building through the falling in of its sides, or an inflated bladder from escape of the air contained in it, or to fall together suddenly, as the two sides of a hollow vessel; to go to pieces; and to shrink up; as, a tube in a steam boiler collapses.' [269 Ala. 372, 113 So.2d 682].
"* See 7A Words and Phrases, Collapse, p. 137."
In refusing to approve of this interpretation of the word "collapse", Judge Parker, in the Jenkins case emphasized the test that the intention of the parties as inferred from the contract is to be governed not by what the insurer intended the words of the policy to mean, but what a reasonable person in the position of the insured would have understood them to mean.
The ruling in Nugent v. General Ins. Co. of America, supra, is not too enlightening. The court predicated its decision on: (1) The premise that the construction of an insurance policy insuring a dwelling, was a Missouri contract and governed by the law of that state, and then resolved that the construction placed thereon by the lower Federal Court would, in the absence of any Missouri decision, be sustained by the appellate court on the principle that it, the appellate court, had consistently "refused to attempt to outpredict, outforecast or outguess a trial judge with respect to a doubtful question of the law of his State." [253 F.2d 802]. No thorough discussion of the soundness of the interpretation of the trial court was attempted.
Considering the foregoing authorities and the absence of any jurisprudence in this state, we adopt the view expressed by the Supreme Court of Kansas in the case of Jenkins v. United States Fire Ins. Co., supra, and hold that the plaintiff in the instant case has alleged a cause of action under the "collapse" provisions of the insurance policy sued upon.
The further contention urged by appellee is that should the alleged loss of plaintiff be determined as covered by the "collapse" clause, that then and in that event the liability of the insurance company is excluded under Section 5(2) of the policy, for the reason that the loss alleged upon was caused directly or indirectly by "other earth movements". The position so taken is to the effect that plaintiff alleges the cause of the loss to be from contraction and expansion of the earth, that such constitutes earth movement, and, therefore, that the loss is excluded from coverage by the exclusion clause. We cannot so construe the clause. As hereinabove stated, the pronouncement of the Supreme Court of this state in Pullen v. Employers Liability Assurance Corporation, Ltd., supra, requires that the language of such exemption of coverage must be clear and specific. In this instance "earth movements" is entirely too general to have application to any degree of certainty. Under the "ejusdem generis" doctrine, the words "earth movement" as used in the policy must be construed as embracing the same *309 general kind, class or nature of peril as its companion words "earthquake" and "landslide". The alleged circumstances, therefore, do not warrant the construction of "earth movement" as contended for by the insurer.
It is our holding that plaintiff has set forth in his petition sufficient allegations to state a cause of action with respect to liability under the insurance contract sued upon. It is, therefore, our ruling that the judgment which sustained the exception of no cause of action be, and the same is hereby reversed, the exception is overruled, and the cause remanded to the District Court for further proceedings, not inconsistent with our rulings herein. Appellee is cast with costs of this appeal. All other costs shall await final decision in the case.