JAMES A. ROGERS et ux., appellees, v. MARYLAND CASUALTY COMPANY, appellant.

No. 50264.

(Reported in 109 N.W.2d 435)

JUNE 13, 1961.

Smith, Peterson, Beckman & Willson, of Council Bluffs, for appellant.

Richard C. Turner, of Council Bluffs, for appellees.

GARFIELD, C. J.—This is a law action by a husband and wife against Maryland Casualty Company on a home owner's insurance policy against loss by "collapse of building or any part thereof." From judgment on jury verdict for plaintiffs the insurance company has appealed. Sole error assigned is the trial court's failure to rule as a matter of law a collapse of the building or part thereof was not shown. We are not persuaded the claimed error should be sustained.

Of course we must consider the evidence in the light most favorable to plaintiffs. They purchased their dwelling May 1, 1958, when comparatively new. There were then no cracks in the basement walls, built of cement blocks and mortar with stucco on the outside. About mid-March, 1959, cracks developed in them. There was first a hairline crack at the ground level all around the house. As the crack got wider and the walls bulged in more, each corner had a stairline crack and the corners gave way. Mortar at the end of each block gave way and each crack resembled a stairway from the first layer above the footings to the basement ceiling. The cracks kept getting worse.

The north basement wall bulged in four inches. One end of a fruit shelf was fastened to the stairway to the basement, the other end was against the north wall. Force of the bulging wall against the shelf and stairway raised the bottom of the stairway three or four inches off the basement floor.

About May 5, 1959, plaintiff Rogers called an adjuster for defendant who came to the house but evidently defendant denied liability. Rogers saw that something had to be done and soon called Mr. Clarence Petry, a house mover who did concrete work. Petry first braced the north wall because he did not want his

'men working too close to it. He then raised the house, braced it and put in four new basement walls. When the house was raised the north wall fell right into the basement. Before Petry commenced work all the basement walls were buckling. One basement window with steel frame was twisted. Bulging in of the basement walls caused the house to go down a half inch to an inch and a half. There were two or three real bad cracks in the kitchen.

Mr. I. T. Carrithers, an architect, examined the house before Petry commenced his work. He found the basement walls had cracks parallel with the floor three or four courses down from the top, around the foundation except in the corners, which had stairstep cracks from the top to the floor. The north wall from the crack to the floor bulged in about four inches, the south wall from one and one half to two inches. The condition Carrithers found was progressive. In time the wall would buckle and fall in. It would be difficult to say exactly how long before this would happen. Both Petry and Carrithers say the damage to plaintiffs' home was caused by pressure against the foundation walls from too much moisture in the ground.

Thirty-seven photographs of the house were received in evidence and are before us. Some of them show most of the stucco on the outside of the north foundation wall broken away from the cement blocks. Other wide cracks on the outside of the foundation wall are shown. Several of the exhibits reveal large cracks, buckling and bulging in of the inside of the wall. Cracks in the walls got worse after these photographs were taken.

Defendant offered no evidence. The trial court gave the jury a rather narrow definition of "collapse" just as defendant requested. The verdict and judgment were for $1658, cost of rebuilding the basement walls and repairing cracks on the floor above the basement, mainly underneath windows and above windows and doors. (It is a one-story house.)

■ Defendant-appellant's first brief point is that it is the duty of the court, rather than a jury, to interpret a written contract with clear terminology. It must be and is conceded this is an elementary rule, frequently stated in various words

of about the same meaning. Only where a contract is ambiguous and its language susceptible of different meanings do rules of construction apply. Huntsman v. Eldon Miller, Inc., 251 Iowa 478, 481, 101 N.W.2d 531, 533, and citations; Weik v. Ace Rents, Inc., 249 Iowa 510, 515, 87 N.W.2d 314, 317; Rice v. Sioux City Memorial Park Cem., 245 Iowa 147, 160, 161, 60 N.W.2d 110, 118.

Defendant's second brief point is that "collapse" is a word of clear and unambiguous meaning. With this we must disagree. Even the dictionaries and ordinary usage ascribe different meanings to the word. Although there is authority to support defendant's view, the clear weight of current authority —especially of the more recent decisions—is to the contrary. We think the policy is fairly subject to the usual rules of construction.

It is fundamental that where an insurance policy is susceptible to more than one construction it will be construed most favorably to the insured. Indianola Country Club v. Fireman's Fund Ins. Co., 250 Iowa 1, 5, 92 N.W.2d 402, 405; Brush v. Washington National Ins. Co., 230 Iowa 872, 876, 299 N.W. 403, 404, 405, and citations.

Defendant's final brief point is that the evidence conclusively shows no collapse of the building or any part of it occurred. As before indicated we must also disagree with this vital proposition. Defendant argues "collapse" is limited to a sudden occurrence resulting in a complete falling down or falling together and, although plaintiffs' walls may have been about to collapse, no "collapse" had actually occurred.

Of course these walls had not completely fallen down. Sizable chunks of stucco had fallen from the foundation and the entire north basement wall was in danger of falling in. The house was seriously damaged from cracks, bulging and buckling of the basement walls. The jury could find its basic structure was materially impaired and it was dangerous to occupy it. It is obvious insurance against collapse of any part of a building is considerably broader than against collapse of the entire building.

Although plaintiffs attempt to distinguish it, we think

Central Mutual Ins. Co. v. Royal (June 25, 1959), 269 Ala. 372, 113 So.2d 680, 72 A. L. R.2d 1283, does support defendant's position. There is also support for it in some earlier decisions, less clearly applicable, cited in the Royal case. So far as we can find, no court has followed the Alabama decision. Six later precedents from five jurisdictions refuse to adopt the narrow meaning there given "collapse." Although of course the facts differ somewhat in these cases they are essentially like those here. Policy coverage is the same. Contentions of the insurers closely resemble those of this defendant.

Jenkins v. United States Fire Ins. Co. (December 12, 1959), 185 Kan. 665, 671, 347 P.2d 417, 422, seems to be the leading precedent on the point under consideration. This from the opinion indicates its holding:

"When construed on the basis of intention, * * *, we believe the clause 'collapse of building or any part thereof' as used in the involved insurance contract is to be interpreted as comprehending that, if brought about by unusual and extraordinary circumstances which the parties to that agreement could not normally expect or foresee on the date of its execution, the settling, falling, cracking, bulging or breaking of the insured building or any part thereof in such manner as to materially impair the basic structure or substantial integrity of the building is to be regarded as a 'collapse' of the building within the meaning of that word as used in such clause of the policy. We further believe that questions relating to whether that condition came about under the previously related conditions and circumstances are questions of fact for the jury and the trial court."

On similar facts the Kansas court followed the Jenkins decision in Allen v. Hartford Fire Ins. Co. (March 4, 1961), 187 Kan. 728, 359 P.2d 829.

Travelers Fire Ins. Co. v. Whaley (November 12, 1959), 10 Cir., Kansas, 272 F.2d 288, 290, 291, approves a construction of "collapse" that accords with the one plaintiffs contend for here. We quote from the opinion:

"* * * So here, we must construe the word in the context it was used by the parties in executing this insurance contract. Did the parties intend there should be no coverage, and, there-

fore, no recoverable loss, unless there was a complete collapse and tumbling down of the foundation wall, so as to cause the superstructure to come crashing down in a heap of rubble; or did they mean the more realistic situation that if the foundation disintegrated by settling, pulling away or cracking so that it would no longer support the house, that there was a partial collapse? * * *.

"* * * If the appellant intended that the word 'collapse' should be ascribed the abstract dictionary definition it now contends for, it should have so stated. In the absence of such an expressed intent, we think it more realistic to define the terms in such a contract as connoting a sinking, bulging, cracking, pulling away of the wall so as to impair its function of supporting the superstructure and destroying its efficiency as a habitation."

Bradish v. British America Assur. Co. (March 8, 1960), 9 Wis.2d 601, 605, 101 N.W.2d 814, 816, quotes the above excerpts from the Jenkins and Whaley opinions respectively, finds them persuasive and holds "we adopt as our own their definitions and applications of collapse coverage as presented by the facts of the instant case. These facts demonstrated that before remedial measures were taken the basement south wall had bulged and cracked in such a manner as to impair materially the wall's basic structure and substantial integrity. We conclude, therefore, that a collapse occurred to a part of the insured building * * *."

Anderson v. Indiana Lumbermens Mut. Ins. Co. (February 2, 1961), La. App., 127 So.2d 304, 307, 308, also follows the Jenkins and Whaley decisions after discussing and declining to approve Central Mutual Ins. Co. v. Royal, supra, 269 Ala. 372, 113 So.2d 680, 72 A. L. R.2d 1283, which defendant cites.

Morton v. Travelers Indemnity Co. (December 16, 1960), 171 Neb. 433, 106 N.W.2d 710, 720, 721, carefully reviews the pertinent authorities on the point under consideration, including the Alabama case, those cited therein, and the Jenkins, Whaley and Bradish decisions, supra. The insurer's contentions were the same as those this defendant urges. The evidence (all offered by plaintiffs) was similar to the present facts except

that the cracks and bulges in the Morton basement walls developed in a shorter period of time. The court holds:

"* * * it cannot be reasonably assumed that a person purchasing insurance for his home, including coverage for direct loss by 'collapse of the building or any part thereof' understood such phrase as providing coverage if and only if his home, or at least a part thereof, falls together in an irregular mass or flattened form. Otherwise, the homeowner would be purchasing little if any added protection.

"In deciding this case as one of first impression in this jurisdiction, we conclude that the authorities relied upon by plaintiffs, as heretofore mentioned and discussed, are sound and well-reasoned cases. We follow the reasoning and conclusions appearing therein, and decide that the verdict and judgment are supported by the evidence * * *."

We are not disposed to disagree with the five jurisdictions (including two that adjoin this state) which have recently decided the question presented to us since the Alabama decision was filed. We too think these precedents are sound, well-reasoned and should be followed.

We may observe that the policy, in the event of a loss thereunder, imposes upon plaintiffs the duty to "protect the property from further damage." The judgment appears to be for a smaller amount than plaintiffs might have recovered if they had acted less promptly in complying with the quoted policy provision.—Affirmed.

All JUSTICES concur except PETERSON, J., who takes no part.