NIAGARA FIRE INSURANCE COMPANY, Appellant,

v.

William CURTSINGER, Katherine Curtsinger, Brook Greer and the Peoples Bank, Appellees.

Court of Appeals of Kentucky.

Nov. 2, 1962.

Percy Brown, Jr., Richard F. Newell, Ogden, Brown, Robertson & Marshall, Louisville, for appellant.

H. B. Kinsolving, Jr., H. B. Kinsolving III, Lucian Kinsolving, Shelbyville, James F. Thomas, New Castle, Edgar Sullivan, Gladys Williams, Taylorsville, for appellees.

STANLEY, Commisssioner.

The appellant, Niagara Fire Insurance Company, on October 5, 1957, issued a general and comprehensive policy of insurance on a new dwelling of the appellees, William and Katherine Curtsinger, located in Taylorsville. Among other indemnities were those for direct loss or damage by "Collapse of the building or any part thereof," and by "Landslide" (both with irrelevant exceptions). This action was brought to recover for damage to the property allegedly within those coverages. The main issue in the case was and is whether there was a loss or damage to the building caused by either "collapse" or "landslide" or both. Contents of the building were also covered. The appeal is from a judgment for $3,109.50 rendered on a verdict.

The appellant contends it was entitled to a directed verdict because of failure of proof of loss within the coverages stated. It also contends that the trial court committed a number of errors in regard to the evidence and the instructions. We address ourselves first to the claim of a failure of proof.

The house, a one-story brick veneer, was built on a hillside. Considerable grading and filling of the lot were necessary. A screened porch was erected on the back of the house with a concrete floor a few inches above the land surface, which had been leveled off from the upsloping hillside. A ditch dug beyond the porch to carry off the downhill water apparently was not entirely sufficient. A carport was erected on the south side of the building on filled ground, which sloped away from the floor.

About a week after the Curtsingers moved in the house, it began raining and continued for several weeks thereafter. There was unprecedented and excessive rainfall.

 The recovery of the insurance was, in part, for what the appellees term a "collapse" of the porch. The legal question is whether the undisputed facts evidenced a collapse within the meaning of the policy.

The appellees testified that during the evening of November 15, 1957, while in their living room, they heard a "loud noise" and the next morning discovered the porch floor and roof had broken loose from the house, and the front "had gone down about a foot." Much evidence was introduced, pro and con, about whether the building had been properly constructed. The appellant contended that the foundation or piers, not only of the porch but of much of the entire structure, had been laid on filled earth, whereas proper construction required that the piers go down to solid ground. On this part of the case it seems to us that was immaterial. The contract was to pay indemnity for damage sustained by a "collapse," which is, of course, an occurrence or eventuality, irrespective of the cause. The insurance company took the building as it was for its contractual coverage.

Specific insurance against a collapse of a building or any part thereof is uncommon. Ordinarily, the term "collapse of a building," or similar condition, is contained in an exception from liability, or a condition subsequent, of a fire insurance policy; and in such cases it is generally held that the distinctive character as a building or a substantial part thereof must have been lost or damaged in order to bring the condition within the exception. Appleman, Insurance Law, § 3080.

The word "collapse" in connection with a building or other structure has a well-understood common meaning. ·Webster's Collegiate dictionary defines the word as, "(1) To break down or go to pieces sud-

denly, especially by falling in of sides; to cave in." A more elaborate judicial definition is given in 14 C.J.S. Collapse, p. 1316. Compare Spears v. Commonwealth, Ky., 256 S.W.2d 362.

In Skelly v. Fidelity & Casualty Co., 313 Pa. 202, 169 A. 78, a question was whether the insured person had sustained bodily injury "in consequence of the collapse of the outer walls of a building while the assured is therein." A runaway railroad car crashed into and tore a hole through the wall of the building, and the insured person was fatally injured. The plaintiff in the action on the policy maintained that the intention of the contract was to cover injury sustained by the falling of a substantial portion of the structural parts of the exterior walls of the building. The court expressed the view that this would extend the terms of the contract beyond what it provided, and in ordinary speech what happened to the walls would not be deemed their collapse, for the runaway car had but torn a hole through the wall. Judgment on a directed verdict for the insurer was affirmed.

Central Mutual Insurance Co. v. Royal, 269 Ala. 372, 113 So.2d 680, 72 A.L.R.2d 1283, is strikingly like the present case. The house had settled and cracks appeared, running through the walls of the building. The owners heard a "racket that sounded like something had fallen and broken in the house." A little later they noticed the walls had cracked on three sides and the foundation was broken and cracked wide open. A segment of the wall had sunk or dropped. The Alabama court, following Nugent v. General Insurance Co., 8 Cir., 253 F.2d 800, and quoting from the Skelly case, supra, held that the term "collapse" in relation to a building was without ambiguity and that the condition for which indemnity was sought was not within the coverage of the policy. The few other cases of like character are summarized in Annotations.

It seems to us that the mere subsidence of the floor of the porch, which pulled it and

the roof away from the building a few inches, cannot be regarded as the collapse of any part of the building, and that the trial court should have so ruled as a matter of law.

When the Curtsingers returned home from work in the afternoon of December 18, 1957, they saw that the land had slid from the side of the carport and the carport roof had sagged and pulled away from the wall an inch or so. The landslide away from the building into a ravine was quite extensive—three or four feet in width. It took five or six loads of dirt and rock to fill in back of it. They found large cracks had come in the floor and the side of the basement wall on which the carport was located. Water was coming up through the basement floor.

■ The single word "landslide" in the policy as a direct cause of any change in the condition in the insured building for which indemnity was payable is in no way defined. The ordinary meaning of the word is the slipping down of a mass of earth or rock on a slope, also the mass which slips down. Webster's Dictionary. Under a familiar rule the ambiguity in the application of the term in this case will be resolved in favor of the insured.

■ We cannot agree with appellant's argument that the word means that damage to an insured building should be limited to that caused by the land sliding down *upon* the structure and as not including damage resulting from the land sliding from *under* or away from it. Where there has been a slide of land from under a highway, making it impassable, it is none the less regarded by everybody as being a "landslide."

■ Prima facie, the circumstances pretty well show that the sliding of the lateral support along the edge of the carport caused damage to it. But the circumstances do not so directly show it was the cause of the cracks in the basement wall or the "collapse up"—as Mrs. Curtsinger described

the bulge in the floor! The condition of the basement wall and the floor could very well have been due to another cause, such as defective drainage and construction. The insurance campany may be held liable only for the direct result of the movement of the lateral support, i. e., the landslide. In principle, the legal question is like that presented in Old Colony Insurance Co. v. Reynolds, Ky., 256 S.W.2d 362. It seems to us that this part of the case presented a question for the jury.

■ The plaintiffs had joined their building contractor, Brook Greer, in the suit, alleging, in substance, that the damages to the building from the landslide and water were the direct result of his breach of contract to properly drain the lot and a breach of his warranty of the building in that respect. When the case was called for trial, the plaintiffs dismissed the action against Greer. The defendant offered to introduce the complaint in evidence on the ground that it contained an admission against interest, but the court sustained an objection to the evidence. We think this was error. Streipe v. Liberty Mutual Insurance Co., 243 Ky. 15, 47 S.W.2d 1004.

■ The appellant makes the point that the instructions were erroneous in that they did not restrict the right of the plaintiffs to recover for the described conditions of the building as being a *direct loss* from the causes, as is provided in the policy. We think the point is well made. Druggist Mutual Insurance Co. v. Baker, Ky., 254 S.W.2d 691.

■ The evidence on another trial should be confined to the reasonable cost of repairing the building made necessary by damage directly caused by the landslide.

We reserve all other questions as to the evidence and to the instructions raised on the appeal, for the issues to be submitted to the jury on another trial will be different.

Judgment reversed.