THORNEWELL and another, Appellants, v. INDIANA LUM-BERMENS MUTUAL INSURANCE COMPANY, Respondent.

*December 1, 1966—January 3, 1967.*

For the appellants there was a brief and oral argument by *Larry W. Rader* of Wausau.

For the respondent there was a brief by *Smith, Puchner, Tinkham & Smith* of Wausau, and oral argument by *Richard P. Tinkham.*

HALLOWS, J. The plaintiffs' house is located in Wausau, Wisconsin, on a lot 120 feet wide which slopes to the south. Along the lot's south boundary and about 12 feet from the house there was a retaining wall. Between the house and the wall a driveway extended from the garage behind the house to the street. The house was built in 1956 and by 1965 the retaining wall had become tipped to the south and a five-inch crack extended down the center of the driveway which had also become tilted to the south.

Plaintiffs hired a masonry contractor in the spring of 1965 to repair the retaining wall and driveway and while inspecting the basement he discovered the south basement wall was bowed in about two and one-half inches from top to bottom and the east wall about two inches. The contractor advised rebuilding the walls before he replaced the driveway. The house was shored up, the walls taken down and it was noted the mortar was weak and crumbly and provided very little, if any, bond between the blocks. The walls were rebuilt with the same eight-inch block. The cost of repairing these walls amounted to $1,500, for which recovery is sought.

The problem of what constitutes the collapse of a building or any part thereof within the meaning of the extended coverage of a standard fire policy was considered by this court in *Bradish v. British America Assur. Co.* (1960), 9 Wis. (2d) 601, 101 N. W. (2d) 814. At that

time there was little authority on the subject and what decisions there were represented two divergent viewpoints, depending basically on whether the term "collapse" as used in the insurance policy was considered ambiguous or unambiguous. The cases taking the view the term was unambiguous and susceptible to only one interpretation held the word "collapse" carried its commonly understood literal meaning and thus required some falling in, loss of shape, or flattening into a mass of rubble of the building or part thereof under consideration.

This strict view was apparently first taken in *Nugent v. General Ins. Co. of America* (8th Cir. 1958), 253 Fed. (2d) 800, but was adopted and popularized in *Central Mut. Ins. Co. v. Royal* (1959), 269 Ala. 372, 113 So. (2d) 680. In *Royal,* the concrete foundation walls of the house had cracked and segments of the wall had sunken or dropped but there was no evidence the wall or the house had fallen down or caved in. In this context the court concluded since there was no falling in or loss of shape or reduction to a flattened form or rubble of the building or of any part thereof, there was no collapse of the building within the meaning of the policy and consequently there could be no recovery for the cracked walls. This view was followed in *Gage v. Union Mut. Fire Ins. Co.* (1961), 122 Vt. 246, 169 Atl. (2d) 29, and coincides with the definition of the word "collapse" in 14 C. J. S., p. 1316, and in Webster's New International Dictionary (2d ed. unabridged). Under this view the building must lose its character as a building and a part thereof must lose its distinctive character as a part of the building. Anno. Insurance—Collapse of Building, 72 A. L. R. (2d) 1287. See also *Kattelman v. National Union Fire Ins. Co.* (1964), 415 Pa. 61, 202 Atl. (2d) 66; *Niagara Fire Ins. Co. v. Curtsinger* (Ky. 1962), 361 S. W. (2d) 762.

The more liberal line of authorities generally holding there can be a collapse within the meaning of an extended coverage insurance policy although there is no falling,

tumbling down or reduction to rubble of the building or the part thereof, originated in the Kansas cases of *Jenkins v. United States Fire Ins. Co.* (1959), 185 Kan. 665, 347 Pac. (2d) 417, and *Travelers Fire Ins. Co. v. Whaley* (10th Cir. 1959), 272 Fed. (2d) 288. This court relied upon these cases in its decision in *Bradish.* In the *Whaley Case* the court defined collapse in reference to a foundation was as "a sinking, bulging, cracking, pulling away of the wall so as to impair its function of supporting the superstructure and destroying its efficiency as a habitation." 272 Fed. (2d) at 291. This language stresses the supporting function of the wall and the effect on the livability of the superstructure and the court found the impairment of the wall did in fact destroy or materially affect the efficiency of the dwelling. In the *Jenkins Case,* the Kansas court pointed out it was error for the trial court to instruct that the settling, falling, cracking, or breaking of the building or any part thereof, which materially impaired the basic structure or substantial integrity of the building had to go so far as to "render it unsuitable for use as a dwelling." 347 Pac. (2d) at 423.

In *Bradish,* while we relied on the rationale of *Whaley* and *Jenkins,* we stated the basement wall "had bulged and cracked in such a manner as to impair materially the wall's basic structure and substantial integrity." 9 Wis. (2d) at 606. The superstructure had not yet been built upon the wall which had suddenly so cracked and bulged as to be in immediate danger of falling.

If one is speaking of a collapse of a whole building, it would seem the building's basic structure and substantial integrity as a building must be destroyed or materially impaired to constitute a collapse. However, when considering the broader coverage of the collapse of only a part of the building, that part can collapse within the meaning of the policy without necessarily impairing the substantial integrity of the entire building or rendering the entire building unsuitable for its normal use. Thus, a chimney

on a dwelling can disintegrate into a pile of rubble and while the basic structure and substantial integrity of the chimney is destroyed, the basic structure or substantial integrity of the dwelling would not necessarily be materially impaired. Likewise, a part of the basement wall might fall and be reduced to rubble without affecting the normal use of the building.

At the other end of the spectrum we find cracked and bulged walls which cannot under any theory be considered in a state of collapse. The reasoning of *Bradish* logically requires that where a part of the building is not reduced to rubble its condition, to amount to a state of collapse, depends upon the severity of the impairment. If the condition of the part of the building claimed to be in a state of collapse is such that the basic structure or substantial integrity of the part is materially impaired so that it cannot perform its structural function as a part of the building and is in immediate danger of disintegrating, then it can be said to be in a state of collapse within the meaning of the extended coverage of the policy.

While the number of jurisdictions which have considered this problem is small, the greater number of them has adopted the liberal, and we think better reasoned, construction of the word "collapse." See *Rogers v. Maryland Casualty Co.* (1961), 252 Iowa 1096, 109 N. W. (2d) 435; *Anderson v. Indiana Lumbermen's Mut. Ins. Co.* (La. 1961), 127 So. (2d) 304; *Allen v. Hartford Fire Ins. Co.* (1961), 187 Kan. 728, 359 Pac. (2d) 829; and *Morton v. Travelers Indemnity Co.* (1960), 171 Neb. 433, 106 N. W. (2d) 710. See also Anno. Insurance—Collapse of Building, 72 A. L. R. (2d) 1287; and 13 Couch, Insurance (2d ed.), p. 611, sec. 48.173. The most recent jurisdiction to follow this view is New Mexico in *Morton v. Great American Ins. Co.* (N. Mex. 1966), 419 Pac. (2d) 239.

In the instant case there is no evidence the basement walls were impaired in their basic structure or in their substantial integrity or that they failed in their function

to support the house. Although the east wall was bulged two inches and the south wall two and one-half inches, they had not fallen and there was no evidence they were in any immediate danger of falling. The main defect seemed to be the mortar between the blocks had crumbled and lost most of its bond. The blocks themselves were sound and were used in rebuilding the walls. The contractor testified he suggested the immediate repair of the walls to save the future expense of tearing up the new driveway which he was about to install. The walls were not replaced because they were in a state of collapse. On this record, we cannot say the trial court's finding that the walls had not collapsed was against the great weight and clear preponderance of the evidence and consequently we must affirm it. *State ex rel. Isham v. Mullally* (1961), 15 Wis. (2d) 249, 255, 112 N. W. (2d) 701; *Mitchell v. Western Casualty & Surety Co.* (1966), 30 Wis. (2d) 419, 421, 141 N. W. (2d) 212. The trial court also found the condition of the walls did not occur suddenly and was caused by surface water and earth movement, but we do not reach the issue of exclusion on this ground since there was no collapse of the basement walls.

Finally, the plaintiffs argue the rebuilding of the walls was required under the policy to prevent further loss. The policy provides "In the event of loss hereunder, the Insured is permitted to make reasonable repairs, temporary or permanent, provided such repairs are confined solely to the protection of the property from further damage . . . ." This section has no application to the facts of this case. A loss must first occur under the policy before the insured may make repairs to prevent further damage and include the cost of repairs as part of his damage. There being no loss by the peril or risk of collapse within the meaning of the policy, there can be no claim for the cost of repairing the walls.

*By the Court.*—Judgment affirmed.