[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 07, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-12597

_____

D.C. Docket No. 99-02835-CV-DLG

SWIRE PACIFIC HOLDINGS INC.,

Plaintiff-Appellant,

versus

ZURICH INSURANCE, CO.,

Defendant,

ZURICH AMERICAN INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 7, 2002)**

Before CARNES, BARKETT and KRAVITCH, Circuit Judges.

CARNES, Circuit Judge:

This diversity case involves an insurance coverage dispute between Swire Pacific Holdings, the owner and developer of a high-rise condominium in Florida, and Zurich American Insurance Company as successor in interest to Zurich Insurance Company, under a Builder's Risk Policy. Swire sued Zurich seeking to recover under the policy the costs it had incurred in correcting design defects in the condominium. The district court granted summary judgment in favor of Zurich, and Swire appeals.

Some or all of the following questions are presented: (1) whether the policy's Design Defect Exclusion Clause bars coverage for Swire's loss; (2) whether the policy's Sue and Labor Clause applies only in the case of an actual, covered loss; and (3) whether the policy's Sue and Labor Clause, if it applies, covers the cost of repairing the structural deficiencies in the condominium building. Each of these questions involves issues of Florida law for which the answer is unclear, and Zurich has indicated to us that these policy provisions are commonplace and can be found in thousands of builder's risk policies issued for projects in the State of Florida. That is why we are going to certify the controlling questions of law to the Florida Supreme Court.

## I. BACKGROUND

### A. FACTS

Swire purchased from Zurich a builder's risk policy, effective February 24, 1997 through February 24, 1999, which was drafted in relevant part by Zurich. The policy insured the Two Tequesta Point Condominium Project, located in Miami, Florida. Swire is one of the insureds under the policy.

In March of 1998, the City of Miami's Building Department informed Swire that Richard Klein, the structural engineer on the condominium project, was being investigated in connection with certain design projects for failure to comply with appropriate governmental building codes and ordinances. Swire's agent, CHM Consulting Engineers, performed a peer review of Klein's structural work on the project and the potential claim of damage arising from that structural work. While the peer review was underway, the City of Miami halted the issuance of a certificate of occupancy. The peer review revealed numerous errors and omissions in the project that had to be corrected.

As a result of the design defects, Swire altered the plans and construction to bring the building into compliance with appropriate governmental building codes. Swire spent approximately $4.5 million in costs to correct the structural deficiencies and filed a claim with Zurich under its builder's risk policy seeking

coverage for those costs.  Zurich denied coverage on the ground that Swire's claim

dealt "with the cost of correcting a design defect and not any physical loss or

damage resulting from the defect."

The relevant provisions of the policy at issue are the Insuring Agreement,

the Design Defect Exclusion Clause, and the Sue and Labor Clause.  The Insuring

Agreement, set forth in the policy's "Coverage" section, provides:

> Subject to the limitations, exclusions, terms and conditions contained
> herein, this Policy insures, in respect of occurrences happening during
> the term of this Policy, against:
>
> Physical loss or damage to the property insured, except as excluded
> hereunder.

The Design Defect Exclusion Clause, set forth in the "Exclusions and Limitations"

section of the policy, excludes:

> Loss or damage caused by fault, defect, error or omission in design,
> plan or specification, but this exclusion shall not apply to physical loss
> or damage resulting from such fault, defect, error or omission in
> design, plan or specification.

The Sue and Labor Clause, set forth in the policy's "Conditions" section, provides:

> In case of loss or damage, it shall be lawful and necessary for the
> INSURED . . . to sue, labor and travel for, in and about the defense,
> safeguard and recovery of the insured property hereunder or any part
> thereof without prejudice to this insurance, nor shall the acts of the
> INSURED or the Company, in recovering, saving, and preserving the
> property INSURED in case of loss or damage be considered a waiver
> or an acceptance of abandonment.  The expenses so incurred shall be
> borne by the INSURED and the Company, proportionately to the

extent of their respective interests.

## B. PROCEDURAL HISTORY

In October of 1999, Swire filed a two-count lawsuit against Zurich. Count I sought declaratory and monetary relief to determine Swire's rights to insurance coverage under the Builder's Risk Policy. Count II sought recovery of money damages arising out of Zurich's failure to provide coverage for loss incurred in correcting the structural deficiencies of the building. Zurich filed an answer containing affirmative defenses. The fourth one asserted that Swire's loss was specifically excluded from coverage due to the Design Defect Exclusion Clause of the policy.

Swire sought partial summary judgment on Count I of its complaint and on Zurich's fourth affirmative defense, arguing that Swire was entitled as a matter of law to a declaration that the Design Defect Exclusion Clause invoked by Zurich does not apply to costs incurred by Swire under the policy's Sue and Labor Clause. Swire alternatively argued that the Design Defect Exclusion Clause does not exclude any costs for work that necessarily damages or destroys portions of the insured property as a result of required remediation or repair of defective property. Zurich moved for summary judgment in its favor on the grounds that the Design Defect Exclusion Clause bars coverage for Swire's claim, the Design Defect

5

Exclusion Clause applies to sue and labor expenses, and the Sue and Labor Clause at issue applies only to actual, covered loss or damage anyway.

The district court granted summary judgment in favor of Zurich. It concluded that Swire's loss was an excluded loss under the policy's Design Defect Exclusion Clause. The court also held that the policy's Sue and Labor Clause did not provide coverage for otherwise excluded losses. Relying on Southern California Edison Co. v. Harbor Insurance Co., 148 Cal. Rptr. 106 (Cal. Ct. App. 1978), the court reasoned that sue and labor expenses are reimbursable only to the extent that they are incurred for the benefit of the insurer in mitigating or preventing a covered loss. The court held that the answer to the question of whether expenses are incurred for the benefit of the insurer lies not in whether the insured's actions may potentially benefit the insurer in some way, but in whether the insured's actions "correlate to an excluded loss." Because the actions taken by Swire correlated to the excluded loss of repairing design defects, the court found that the costs incurred by Swire were not incurred for the benefit of Zurich and thus were not reimbursable under the Sue and Labor Clause. The district court stated that it was unnecessary to reach the issue of whether the Sue and Labor Clause applies only when an actual, covered loss has occurred.

On appeal, Swire contends that the district court erred in holding that the

6

Design Defect Exclusion Clause applies to its loss, and in holding that any loss to which that clause applies is also excluded from coverage under the policy's Sue and Labor Clause. Zurich, as expected, lauds the district court's holding and reasoning, and repeats them as its contentions. Zurich also argues that the Sue and Labor Clause does not apply in the circumstances of this case, anyway, because no covered loss had occurred at the time of the expenditures.

## II.  DISCUSSION

We review <u>de novo</u> the district court's grant of summary judgment. <u>Squish La Fish, Inc. v. Thomco Specialty Prods., Inc.</u>, 149 F.3d 1288, 1290 (11th Cir. 1998).

### A.  THE  DESIGN DEFECT EXCLUSION CLAUSE

The policy's Design Defect Exclusion Clause excludes coverage for "[l]oss or damage caused by fault, defect, error, or omission in design, plan or specification." Part of that clause, however, is the  "ensuing loss" provision, which states that "physical loss or damage resulting from such fault, defect, error or omission in design, plan or specification" is covered under the policy. Swire asserts that the Design Defect Exclusion Clause considered as a whole is ambiguous and therefore should be construed against Zurich, the insurer and drafter. The district court rejected Swire's argument that the clause is ambiguous

7

and held that Swire's loss fell within the exclusion for "[l]oss or damage caused by [a] . . . defect" and not within the "ensuing loss" provision. That conclusion was based upon the undisputed fact that the building had not collapsed at the time of the repairs.

Several decisions support the district court's holding that the Design Defect Exclusion Clause is not ambiguous and that the loss at issue – the cost of correcting of design defects – cannot constitute "physical loss" under the "ensuing loss" provision because it was incurred to correct an excluded peril. See Laquila Constr., Inc. v. Travelers Indem. Co., 66 F. Supp. 2d 543, 544-45 (S.D.N.Y. 1999) (where builder's risk policy contained an exclusion for the cost of making good faulty workmanship but had an "ensuing loss" provision for physical damage resulting from such faulty workmanship, a claim for cost of repairing defective concrete fell "squarely into the exclusion clause"), aff'd, 216 F.3d 1072 (2d Cir. 2000) (unpublished); Schloss v. Cincinnati Ins. Co., 54 F. Supp. 2d 1090, 1094-96 (M.D. Ala. 1999) (where homeowner's insurance policy contained an exclusion for loss caused by rot, and the exclusion was subject to an "ensuing loss" provision, the costs associated with repairing rot damage were excluded and did not fall under the "ensuing loss" provision), aff'd, 211 F.3d 131 (11th Cir. 2000) (unpublished); Allianz Ins. Co. v. Impero, 654 F. Supp. 16, 17-18 (E.D. Wash. 1986) (where

8

builder's risk policy contained an exclusion for cost of making good faulty workmanship and had an "ensuing loss" provision, losses incurred in repairing a defectively erected concrete wall were not covered).  But those decisions did not involve Florida law, and the parties have not cited, nor have we found, a decision applying Florida law to this issue.

### B.  THE SCOPE OF THE SUE AND LABOR CLAUSE

Swire contends that even if the Design Defect Exclusion Clause would otherwise exclude the cost of repairing the structural deficiencies in the condominium project, that cost is included because of the policy's Sue and Labor Clause.  That contention raises two issues.  The first is whether the policy's Sue and Labor Clause even applies where there has been no actual, covered loss.  The Sue and Labor Clause applies, by its terms, "[i]n the case of loss or damage."  In light of that language, Zurich argues the clause has no application here because no actual, covered loss had occurred at the time Swire incurred the costs of correcting the structural deficiencies.

While several courts have addressed this issue, they have reached conflicting results, and none of the decisions applied Florida law.  See Witcher Constr. Co. v. Saint Paul Fire and Marine Ins. Co., 550 N.W.2d 1, 7-8 (Minn. Ct. App. 1996) (where policy provision requires the insured to "do everything possible to protect

9

the property from further damage" upon the occurrence of a covered loss, that provision does not alter the insured's common law duty to prevent harm to the insured property or the insurer's corresponding obligation to reimburse the insured for such efforts); Wolstein v. Yorkshire Ins. Co., 985 P.2d 400, 409 (Wash. Ct. App. 1999) (where sue and labor provision by its terms applies "in case of any Loss or Misfortune," a covered loss does not have to occur in order to invoke coverage under the clause; actions taken to prevent a covered loss come within the scope of the clause); Thornewell v. Ind. Lumbermens Mut. Ins. Co., 147 N.W.2d 317, 321 (Wis. 1967) (where policy provision permits the insured "[i]n the event of loss hereunder" to make and be reimbursed for the cost of reasonable repairs, the loss that has occurred must be one that is otherwise covered under the policy).

Several Fifth Circuit decisions state generally that, under a sue and labor clause, the insured has a duty to minimize or prevent covered losses. See Blasser Bros., Inc. v. N. Pan-American Line, 628 F.2d 376, 386 (5th Cir. 1980) (where sue and labor provision applied "[i]n case of any loss or misfortune," the court stated that any action to preserve insured goods or mitigate damages would be included expenses under the clause); Cont'l Food Prods., Inc. v. Ins. Co. of N. Am., 544 F.2d 834, 837 & n.1 (5th Cir. 1977) (stating that the insured has a duty under a sue

10

and labor clause to protect insured property in order to minimize or prevent covered losses); Reliance Ins. Co. v. The Escapade, 280 F.2d 482, 488 (5th Cir. 1960) (same). But those decisions all involve mitigation claims where an actual loss took place before any expenses were incurred. See Blasser, 628 F.2d at 378; Cont'l Food, 544 F.2d at 835; Escapade, 280 F.2d at 484.

## C. THE EFFECT OF THE SUE AND LABOR CLAUSE

There is another issue raised by Swire's contention that the cost of making the structural repairs to the condominium building is covered by the Sue and Labor Clause. That issue arises in this case only if the occurrence of a covered loss is not a prerequisite to application of the clause. If the clause does apply even when there has been no covered loss at the time the repairs are made, then what might be called a "mixed motives" issue arises. The Sue and Labor Clause provides that "[i]n case of loss or damage, it shall be lawful and necessary for [Swire] to sue, labor and travel for, in and about the defense, safeguard and recovery of the insured property hereunder." Swire contends that the Sue and Labor Clause is a separate insuring agreement, and that the repair action, even if taken to correct an uncovered loss (a design defect), is covered by the clause because that action also

11

prevented a future covered loss (the collapse of the building).[1]  Zurich, of course,

disagrees.

While both Swire and Zurich cite case law in support of their positions on

this issue, neither points to a Florida case directly on point.  In support of its

position, Swire relies on a 1996 Minnesota appellate court decision, as well as a

1916 King's Bench decision.  See Witcher Const. Co. v. St. Paul Fire and Marine

Ins. Co., 550 N.W.2d 1, 2-3, 8 (Minn. Ct. App. 1996) (where property insurance

policy contained an exclusion for delay and loss of use as well as a provision

similar to a sue and labor clause, the policy's exclusions for delay and loss of use

did not limit the expenses that are reimbursable, provided the insured directed its

---

[1]This is a good place to note Swire's argument that the district court decided disputed facts against it when the court determined that Swire's intentions, in correcting the structural deficiencies, were to correct the defectively-designed building and not to prevent future covered losses in the discharge of its duty to Zurich.  In the district court the parties agreed that there were no disputed facts preventing the case from being decided on summary judgment.  It was undisputed there that the City of Miami had halted the issuance of a certificate of occupancy for the building because of the structural deficiencies, and that the expenditures in question had to be made by Swire in order to bring the building into compliance with the building code.  Furthermore, in oral argument before us, counsel for Swire conceded that the building could not be occupied until the design defects were corrected.

The facts as presently developed are that Swire had to correct the structural deficiencies in order to occupy the building, and that by correcting those deficiencies Swire may have prevented the future collapse of the building, which would have been a covered loss. Whether the collapse, if it occurred, would have happened during the period this insurance policy covered is not known and is unknowable, at least on this record. If  recovery of  the cost of repairing the structural defects under the Sue and Labor Clause is dependent upon whether the building would have collapsed, or would have done so during the period of coverage, a remand for factual development on that point will be necessary.

12

efforts primarily at preventing an imminent covered loss); <u>Wilson Bros. Bobbin Co. v. Green</u>, [1917] 1 K.B. 860, 860, 864 (1916) (where policy insuring goods on board a steamship against "war risk" contained both an exclusion for "all claims arising from delay" and a sue and labor clause, the exclusion for claims arising out of delay did not affect recovery under the sue and labor clause where costs associated with delay were incurred to avoid the loss of the goods never reaching their destination). Zurich, on the other hand, points to <u>Southern California Edison v. Harbor Insurance Co.</u>, 148 Cal. Rptr. 106 (Cal. Ct. App. 1978), the decision that the district court in this case relied on. In contrast to the courts in <u>Witcher</u> and <u>Wilson</u>, the court in <u>Edison</u> held that the insured could not recover under a builder's risk policy's Sue and Labor Clause for costs it claimed were incurred to mitigate and prevent a covered loss (loss to the superstructure) where the means (correcting a design defect) the insured used to mitigate and prevent the loss were excluded from recovery under the policy's exclusion for the "[c]ost of making good faulty workmanship, construction or design." <u>Id.</u> at 107, 111-13.

Swire does cite one Florida decision, although it recognizes that decision is not on all fours with this case. It cites <u>Steuart Petroleum Co., Inc. v. Certain Underwriters at Lloyd's London</u>, 696 So. 2d 376 (Fla. Dist. Ct. App. 1997), for the proposition that where, under Florida law, two insurance contract provisions are in

13

conflict, the clause affording greater coverage should prevail. Id. at 379 (where insurance policy's Foam Loss Assumption Clause and Expenses to Reduce Loss Clause both dealt with loss reduction expenses and conflicted, the court allowed the latter clause, which afforded greater coverage, to prevail). Although Steuart has the advantage of being a Florida decision, it is distinguishable. In contrast to Steuart, only one of the provisions at issue here – the Sue and Labor Clause – specifically deals with the subject of loss reduction expenses. This is not a case where coverage is provided by two clauses. Moreover, the Steuart court's holding turned in part on the fact that the Expenses to Reduce Loss Clause was an endorsement, which, to the extent it was inconsistent with the body of the policy, controlled. Id. Here no endorsement is involved.

### III. QUESTIONS CERTIFIED

We could guess how the Florida Supreme Court would decide this case, but it would only be a guess. That Court alone can authoritatively decide the state law issues we have discussed and any others that may be lurking in the facts of this case. Accordingly, we respectively certify to the Florida Supreme Court the following questions:

1. Whether the policy's Design Defect Exclusion Clause bars coverage for the cost of repairing the structural deficiencies in the condominium building;

14

2.  If the first question is answered in the affirmative, whether the policy's Sue and Labor Clause applies only in the case of an actual, covered loss;

3.  If the second question is answered in the negative, whether the policy's Sue and Labor Clause covers the cost of repairing the structural deficiencies in the condominium building.

Our phrasing of the certified questions is merely suggestive, and it does not in any way restrict the scope of inquiry by the Supreme Court of Florida.  As we have said before:

> [T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case.  This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are given, whether as a comprehensive whole or in subordinate or even contingent parts.

Martinez v. Rodriguez, 394 F.2d 156, 159 n.6 (5th Cir. 1968) (citations omitted). Our obligation is to decide the case before us, and any answers the Florida Supreme Court gives that aids us in doing so will be greatly appreciated, as always.

The entire record in this case, together with copies of the briefs of the parties, is transmitted herewith.

QUESTIONS CERTIFIED.