No. 21808.

LEO J. HIGGINS AND JOYCE LEE HIGGINS *v.* THE CONNETICUT FIRE INSURANCE COMPANY, A CORPORATION.

(430 P.2d 479)

Decided July 24, 1967.

EMORY L. O'CONNELL, HELMAN, YOUNGE, HOCKENSMITH and STACEY, for plaintiffs in error.

SMITH, HOLMES, WILLIAMS and TURNER, for defendant in error.

*In Department.*

Opinion by JOHN N. MABRY.*

*Retired District Judge sitting under assignment by the Chief Justice under provisions of Article VI, Section 5(3) of the constitution of Colorado.

THE parties occupy the same relative positions they had in the district court, where the plaintiffs unsuccessfully sought damages for the alleged "collapse" of their dwelling. Reference to the litigants will be made as plaintiffs and defendant, or by name. The case was tried to the court.

Plaintiffs, a few weeks after moving into their new home, observed hairline cracks in a lower wall. After a few months, cracks by separation appeared around one or more doors and windows, and a slight upheaval appeared in the basement floor. The cracks increased in number and size and reached their peak about eighteen months after the family first moved into the house. There was no worsening of the condition of the house between the peak and the time of trial, which was more than three years later. The plaintiffs at all times lived in the dwelling which was impervious to the elements. There was no other material damage to the structure. The building was neither distorted nor changed from its original form and character from the time it was insured.

During the trial, at the invitation of the plaintiffs, the court visited and inspected the structure and observed cracks in the building. In its subsequent findings, however, the court greatly minimized the number, variety and size of the cracks and amount of damage, as claimed by the plaintiffs.

The defendant, by its Home Owners insurance policy, insured the plaintiffs against direct loss to the property covered by the following peril:

"*Section 14.* Collapse of building(s) or any part thereof, but excluding loss to outdoor equipment, fences, retaining walls not constituting a part of a building, driveways and walks, except as the direct result of the collapse of a building."

Based on the foregoing evidence and the provisions of the insurance policy, the trial court, in its carefully prepared and detailed findings, concluded: that the word

"collapse" as used in the insurance policy is not ambiguous; that the word connotes a complete change in a structure, where the building loses its distinctive character as a building and when the substantial integrity of the building has been damaged to such an extent that it has been materially impaired and rendered uninhabitable; that within the meaning of the policy there had been no collapse. It found the issues generally for the defendant and dismissed the complaint.

Whether the word "collapse," as used in a contract of insurance, is ambiguous is relatively new to American jurisprudence; it has not been previously before this court for determination. It appears that only twelve states in the Union have passed upon this precise proposition and two lines of authority have emerged from these jurisdictions. One such group holds that the word "collapse," in the context of the peril insured against in Higgins' policy, is not ambiguous and, consequently, courts may not interpret such word, but must bottom their decision on accepted definitions and common usage. This is the defendant's theory in the case.

The other authority — the numerical minority, and we believe the less well-reasoned cases — has taken the position that the term, in such cases, is ambiguous and courts are free to determine the intent of the parties regarding the use of the word; and furthermore, the intent should be resolved against the insurance companies that prepared the contract. Such holdings support plaintiffs' thesis.

 Words are not fungible, but have a definite and precise meaning; they express whatever meaning accepted standards of custom and usage have attached to them. The word "collapse" used in this insurance policy has a generally accepted and well-understood meaning. As used here it is without ambiguity. Section 14 of the insurance policy is clear and likewise unambiguous. The policy contains no doubtful meaning of that which is recondite; it must be construed as read. Courts are not

at liberty to raise doubts where there are none, or to make a new contract between the insured and the insurer.

Webster's dictionary defines "collapse" as:

"To fall or shrink together as the two sides of a hollow vessel; to fall into a flattened mass, distorted, or disorganized state."

In 14 C.J.S. at 1316 the term "collapse" is described as follows:

"To break down or fail abruptly and utterly, to cave in; to close by falling or shrinking together, to fall together, or into an irregular mass or flattened form, through loss of firm connection or rigidity and support of the parts or loss of the contents, as a building through the falling in of its sides, or an inflated bladder from escape of the air contained in it, or to fall together suddenly, as the two sides of a hollow vessel * * *."

█ The walls of Higgins' building had small cracks in them as did portions of the concrete foundation in the lower floor, but there had been no falling in or loss of shape of the building; it was not, in whole or in part, reduced to a flattened form, or otherwise damaged so as to bring it within the coverage of Section 14 of the policy. Plaintiffs' entire family continued to live in the house safely and comfortably. We believe there was no collapse of the building within the purview of the policy, or in common parlance. *Central Mutual Insurance Company v. Royal*, 113 So.2d 680 (Ala.), 72 A.L.R.2d 1283. To the same effect and with the same ultimate conclusions, see: *Gage v. Union Mutual Fire Insurance Company*, 169 A.2d 29 (Vt.); *Graffeo v. U.S. Fidelity & Guaranty Company*, 246 N.Y.S.2d 258; *Kaplan v. Interstate Fire & Casualty Company*, 35 Ill. App.2d 400; *Niagara Fire Insurance Company v. Curtsinger*, 361 S.W.2d 762 (Ky.); *Nugent v. General Insurance Company*, 253 F.2d 800; and *Employers Mutual Casualty Company v. Nelson*, 361 S.W.2d 704 (Tex.).

█ We hold that the trial court correctly found and

adjudged that the word "collapse" and the contract of insurance in which the word was used are both unambiguous, and the Higgins' building, or any part thereof, did not "collapse," as contemplated by the use of that term in the insurance policy. Such resolution by the trial court is adequately supported by the evidence.

The court below construed other provisions of the insurance policy favorably to the defendant, but the question relating to the term "collapse" is the pivotal one. Our determination of that proposition as expressed above makes it unnecessary for us to consider other assignments of error or other findings of the trial court.

The judgment is affirmed.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE DAY and MR. JUSTICE MCWILLIAMS concur.