485 P.2d 908 (1971)
NORTHWESTERN MUTUAL INSURANCE COMPANY, Plaintiff in Error,
v.
BANKERS UNION LIFE INSURANCE COMPANY, Defendant in Error.
No. 71-030, (Supreme Court No. 24234.)
Colorado Court of Appeals, Div. II.
April 13, 1971.
Rehearing Denied May 4, 1971.
Certiorari Denied June 21, 1971.
*909 White & Steele, John E. Clough, Denver, for plaintiff in error.
Wood, Ris & Hames, William K. Ris, Denver, for defendant in error.
Not Selected for Official Publication.
DUFFORD, Judge.
This case was transferred from the Supreme Court pursuant to statute.
The parties are before us in reverse of their trial court positions. We shall refer to them respectively as "Northwestern" and "Bankers."
Bankers brought suit against Northwestern, asserting coverage under a special multi-peril policy relating to an office building owned by Bankers. Bankers sought reimbursement under the policy for a direct loss in the amount of $31,866.91. Northwestern denied coverage, and the matter was thereafter tried to the court.
Following trial, judgment was entered against Northwestern in the amount of $31,834.41, and Northwestern appeals from that judgment.
Bankers' judgment rests upon a determination by the trial court that there had been a "collapse" of a part of Bankers' building. In this appeal, Northwestern concedes that the policy of insurance which it issued on the building insured against any direct losses Bankers suffered as a result of the collapse of its building or any part thereof; but it contends that the law of this jurisdiction pertaining to building collapse as an insured hazard was misapplied by the trial court.
The material facts are not disputed. Bankers' building is a multi-storied office building. The side surfaces of the building are faced with large flat marble panels having a thickness of 1¼" to 1½". These marble panels were originally affixed to the 12-inch thick masonry walls of the building by the use of metal Tanchors and grouting. Their purpose, as a part of the building, can best be described as that of providing an external veneer. Four of these marble panels fell from one corner of the building and three fell from another corner. Investigation revealed that numerous other panels were in danger of falling, and these were then removed. The costs of removing such panels and of replacing them and the fallen panels constitute the costs for which Bankers sought recovery from Northwestern. The trial court concluded, on these facts, that there had been a collapse of the walls of the building and granted such recovery.
The trial court's conclusion constitutes a misapplication of the rules of law announced by our Supreme Court in Higgins v. Connecticut Fire Insurance Co., 163 Colo. 292, 430 P.2d 479. In Higgins it was ruled that the word "collapse" in the context of being an insured peril under a policy of insurance is not ambiguous, and that "courts may not interpret such word, but must bottom their decision on accepted definitions and common usage."
Three definitions of the word "collapse" appear in Higgins, including a definition used by the lower court in that case which is set forth with favor by the Supreme Court in restating the lower court's conclusions. Common to all of the definitions *910 appearing there is the theme that the "collapse" of a building connotes, among other things, a substantial change in structure and loss of form. In the instant case, there was no structural change and loss of form. We are compelled by the decision in Higgins to rule that the falling of the marble panels from the sides of Bankers' building did not constitute a collapse of a part of that building and an insured loss under the policy of insurance which was issued by Northwestern.
Our decision on this question precludes consideration of the other points of error raised in this appeal.
Judgment reversed and cause remanded with directions that complaint be dismissed with prejudice.
SILVERSTEIN, C. J., and ENOCH, J., concur.