Frank L. SHERMAN and Bertha J. Sherman, Plaintiffs-Appellants,

v.

SAFECO INSURANCE COMPANY OF AMERICA, A Washington Corporation, Defendant-Appellee.

No. 82CA1311.

Colorado Court of Appeals, Div. III.

June 16, 1983.
Rehearing Denied July 14, 1983.

Ott, Kirkwood & Cronan, Edward L. Kirkwood, Denver, for plaintiffs-appellants.

Hall & Evans, Michael W. Jones, Alan Epstein, Denver, for defendant-appellee.

TURSI, Judge.

Plaintiffs, Frank and Bertha Sherman, appeal from the trial court's entry of judgment denying their claim for insurance benefits under a homeowners' policy issued by defendant. Plaintiffs contend that the trial court erred in failing to find that their residence, or a part thereof, had "collapsed," within the meaning of their policy. We reverse and remand with directions.

In May 1975 defendant issued plaintiffs a homeowners policy to cover their newly purchased home. The policy insured against direct loss to the home by the following peril:

"*Collapse of buildings or any part thereof,* but excluding loss to outdoor equipment, awnings, fences, pavements, patios, swimming pools, foundations, retaining walls, bulkheads, piers, wharves, or docks, all except as the direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinkage, bulging or expansion."

In early July 1979, when the policy was in force, plaintiffs discovered that two or three layers of brick from the upper portion of a solid brick exterior wall of their home had fallen out and landed on the sidewalk below. Upon further investigation, plaintiffs also discovered that the ridge of the roof had fallen "a few feet" and the roof had sagged. Because of these occurrences, the City and County of Denver required that plaintiffs vacate the house. Plaintiffs moved out in the fall of 1979 and sold the home in April 1980.

A structural engineer who investigated the damage for defendant in July 1979 testified that a sill plate, a timber normally anchored in position on top of a wall to provide a connection between the roof rafters and the wall, had slipped. The engineer indicated that the slippage "essentially took the props out from under the roof," allowed the roof to spread and sag, and caused the upper portions of two brick exterior walls of the house to lean and tip out. He opined that release of the sill plate would explain the abrupt movement of the roof and falling of brick noted by plaintiffs.

The trial court found that because of a combination of inadequate construction and the cutting of a major support beam in the basement, "severe damage" had been done to plaintiffs' property. However, expressing the view that a collapse means "a complete falling down of the building," the court concluded that a collapse "did not occur to the subject property."

In this appeal, plaintiffs contend that the trial court erred in so defining the term "collapse." They further contend that the court erred in failing to consider whether a "part" of their home had collapsed. We agree with both contentions.

The word "collapse," in the context of a peril being insured against in an insurance policy, is not ambiguous, has a generally accepted and well understood meaning, and must be construed as read. *Higgins v. Connecticut Fire Insurance Co.,* 163 Colo. 292, 430 P.2d 479 (1967). "Collapse" connotes, among other things, falling or shrinking together; falling into a flattened mass or disorganized state; breaking down or falling into an irregular mass or flattened form, through loss of firm connection or rigidity and support of the parts. *Higgins v. Connecticut Fire Insurance Co., supra.* Hence, while not falling completely down to the ground, an object may nonetheless "collapse" by a flattening or breaking down because of a loss of its structural rigidity or by falling into or against itself.

Additionally, the insurance policy at issue here provides coverage not only for such "collapse" of a building, but also for collapse "of any part thereof." Since a roof and supporting foundation walls are examples of "parts" of a building, analysis of whether these parts of plaintiff's home had collapsed within the meaning of *Higgins, supra,* should have been undertaken by the trial court. *See Northwestern Mutual Insurance Co. v. Banker's Union Life Insurance Co.,* 485 P.2d 908 (Colo.App.1971) (not selected for official publication).

In view of the foregoing, and because no evidentiary findings were made concerning the condition of plaintiffs' home or its parts, we remand the matter to the trial court for further factual findings, for a determination based on such findings of whether the subject building, or any part thereof, collapsed within the meaning of *Higgins v. Connecticut Fire Insurance Co., supra,* and for a determination of damages, if appropriate. We note that neither *Higgins* nor the subject policy itself would permit a finding of "collapse" when the dam-

age consists only of "settling, cracking, shrinkage, bulging or expansion." Hence, when determining on remand whether there was any "collapse," the trial court must resolve any remaining factual issues concerning whether these conditions constituted the sole damage to the structure or its parts.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

BERMAN and KELLY, JJ., concur.