**ALLSTATE INSURANCE COMPANY, Plaintiff,**

v.

**FOREST LYNN HOMEOWNERS ASSOCIATION, Defendant.**

**No. C94–1111R.**

United States District Court, W.D. Washington at Seattle.

July 6, 1995.

Craig Bennion, Cozen & O'Connor, Seattle, WA, for plaintiff.

Robert A. Medved, Linda L. Foreman, Foster Pepper & Shefelman, Seattle, WA, for defendant.

## ORDER RE MOTIONS FOR PARTIAL SUMMARY JUDGMENT

ROTHSTEIN, District Judge.

THIS MATTER comes before the court on motions by plaintiff and defendant for partial summary judgment. Having considered the pleadings filed in support and in opposition to the motions, the court finds and rules as follows:

## I. BACKGROUND

Plaintiff Allstate Insurance Company ("Allstate") filed this declaratory judgment action for a determination of coverage under a property insurance policy issued by Allstate to defendant Forest Lynn Homeowners Association ("the Association"). The Association seeks coverage under the property insurance policy for damage to the exterior elevated walkway system at the Forest Lynn Condominiums ("Forest Lynn").

### A. The Walkways at the Forest Lynn Condominiums

Built in 1976, the Forest Lynn Condominiums consist of 14 wood-framed buildings, three stories in height. The only access to and from the units on the second and third levels is by the exterior elevated walkway system, made up of a series of elevated decks. These walkways also connect the buildings with each other. The exterior walkway system is made of vertical wood posts supporting horizontal glu-lam beams. The glu-lam beams support horizontal wood joists which are covered by wood decking floors with a concrete topping slab.

Although they emphasize different conditions, both parties agree that there is no factual dispute as to the condition of the walkways at Forest Lynn. *See* pp. 3—5, Allstate Memo. in Support of Summ. Judg.; pp. 3—5, Association Memo. in Support of Summ. Judg. The walkways are damaged.

The parties agree that at least some of the posts supporting the walkways are experiencing rot and hidden decay. Some of the glu-lam beams have rot damage as well. Some beams are deformed and have crushed or compressed. The concrete topping is cracked and uneven in places, and the wood decking under the concrete is probably rotted in places. The parties agree that the rot was caused by water damage of some form.

The parties also agree that at least portions of the walkways need to be replaced and that some structural supports have lost at least some of their load-bearing capacity. The walkways have been "shored up" on an ongoing basis since November 1993.

### B. The Allstate Property Insurance Policy

The Association has purchased property insurance from Allstate since 1986. On May 28, 1993 the Association submitted a written claim to Allstate for the rot and deterioration of the walkways and their supporting beams and posts. The policy in effect at the time the Association submitted its claim, No. 050 707962, was effective January 23, 1993 to January 23, 1994. The policy contained two separate provisions which are relevant to the Association's claim, referred to by the parties as the Collapse provision and the Coverage A provision. The relevant portions of these provisions are set out in the Appendix to this order.

On July 23, 1993 Allstate denied coverage of the Association's claim under the Coverage A provision of the Policy. At that time, Allstate did not consider the Collapse provision of the Allstate policy. In October, 1993 Allstate refused to renew the Allstate Policy. On February 2, 1994 the Association requested that Allstate reconsider its denial and that Allstate review the separate Collapse provision of the policy. On June 23, 1994 Allstate denied coverage under the Collapse provision of the policy.

The Association has moved for partial summary judgment, arguing that the Collapse provision of the policy provides coverage for the damage to the walkways at Forest Lynn. Allstate has moved for partial summary judgment, arguing that the policy does not provide coverage for the claimed damage.

## II. DISCUSSION

### A. Legal Standards

A grant of summary judgment is appropriate if it appears, after viewing the evidence in the light most favorable to the opposing party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assn.*, 809 F.2d 626, 630–631 (9th Cir.1987); *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir.1985). Summary judgment is not appropriate if "a result other than that proposed by the moving party is possible under the facts and applicable law." *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 591 (9th Cir.1981). Additionally, "[u]nder Washington law, the interpretation of an insurance contract is a matter of law." *American Home Assurance Co. v. Cohen*, 815 F.Supp. 365, 368 (W.D.Wash.1993), citing *McDonald v. State Farm Fire and Cas. Co.*, 119 Wash.2d 724, 730, 837 P.2d 1000 (1992).

The parties agree, at least as to the Collapse provision of the policy, that there are no disputes of fact precluding summary judgment. With respect to the Collapse provision, both parties agree that the court should interpret the policy, and determine whether the claimed damage is covered, as a matter of law. *See* pp. 2, 23 Allstate Memo. in Supp. of Summ. Judg.; p. 7, Association Memo. in Supp. of Summ. Judg. Allstate has also moved for summary judgment on the Coverage A provision of the policy. With respect to coverage under the Coverage A provision, the Association contends there are disputes of fact precluding summary judgment at this time.

### B. The Collapse Provision of the Allstate Policy

The parties agree that the threshold issue for the court to decide is whether the damage claimed by the Association constitutes "collapse" in such a manner as to trigger coverage under the Collapse provision of the insurance policy. The parties also agree that the policy does not define the term "collapse" and therefore this court's task is to predict how the Washington State Supreme Court

would rule on this issue.[1] *Westlands Water Dist. v. Amoco Chemical Co.,* 953 F.2d 1109, 1111 (9th Cir.1991); *see also American Home Assurance Co.,* 815 F.Supp. at 368. In addition to that inquiry, if the court finds that the Collapse provision has been triggered by the damage claimed at Forest Lynn, the court must determine if the specific language of the Collapse provision nevertheless excludes coverage.

### 1. Interpretation of "Collapse"

■ Under Washington law, if terms in an insurance policy are ambiguous, those terms are construed against the drafter. *McDonald v. State Farm Fire and Cas. Co.,* 119 Wash.2d at 733. "Where a provision of a policy of insurance is capable of two meanings, or is fairly susceptible of two constructions, the meaning and construction most favorable to the insured must be employed ..." *Shotwell v. Transamerica Title Ins. Co.,* 91 Wash.2d 161, 167–68, 588 P.2d 208 (1978) (citations omitted).

Allstate argues that the Forest Lynn Condominiums have not suffered from collapse and therefore the Collapse provision of the policy is not applicable. Allstate argues that the term "collapse" is defined in part by the policy language stating that "Collapse does not include settling, cracking, shrinkage, bulging or expansion." p. 3, Allstate policy. Additionally, Allstate argues that the damage claimed by the Association does not constitute collapse because the damage suffered by the walkways is not within the plain, ordinary meaning of the term "collapse" as defined in a standard English dictionary.

The Association argues that the structural impairment suffered by the walkways is covered by the Collapse provision and that the term "collapse" has been interpreted by numerous courts to encompass the type of damage the walkways have undergone.

The court finds that the term "collapse" is ambiguous in the policy. If the court were to adopt Allstate's reasoning that the building or parts of the building must actually "fall down" or "fall to pieces" before collapse will be found, insureds would have the incentive to allow the structure to progress to the point of falling down. For example, the policy covers collapse from hidden decay. Were the insured to discover the decay prior to the structure falling down, Allstate's argument would lead to the conclusion that there was no coverage until the structure fell, irrespective of whether repairs could have prevented the fall. This result defies common sense. As the court in *Beach v. Middlesex Mut. Assur. Co.,* 205 Conn. 246, 532 A.2d 1297 (1987), stated:

> [r]equiring the insured to await an actual collapse would not only be economically wasteful ... but would also conflict with the insured's contractual and common law duty to mitigate damages.

*Id.* at nt. 2, p. 1301 (Conn.1987).

The court finds persuasive the reasoning of the numerous courts which have interpreted the term "collapse" in property insurance policies. For example, in *Beach* the Supreme Court of Connecticut considered a provision with nearly the same language and considered the same argument that Allstate advances here about the standard definition of "collapse." However, as that court noted, "Although 'collapse' encompasses a catastrophic breakdown ... it also includes a breakdown or loss of structural strength ..." *Id.* at 1299–1300. The *Beach* court also noted that "if the [insurer] wished to rely on a single facial meaning of the term 'collapse' as used in its policy, it had the opportunity expressly to define the term to provide for the limited usage it now claims to have intended." *Id.* at 1300.

Although there are older cases in which the term "collapse" was interpreted to cover only a sudden falling down or a catastrophic flattening resulting in a structure broken into pieces, *see, e.g., Olmstead v. Lumbermens Mutual Ins. Co.,* 22 Ohio St.2d 212, 216, 259 N.E.2d 123 (1970); *Higgins v. Connecticut Fire Ins. Co.,* 163 Colo. 292, 295–96, 430 P.2d 479 (1967); *Eaglestein v. Pacific National Fire Ins. Co.,* 377 S.W.2d 540, 545 (Mo.Ct. App.1964), the majority of modern courts considering this issue have determined that

---

1. The parties have not found, nor has the court located, any Washington precedent interpreting a collapse provision such as the one at issue.

the term "collapse" is "sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity of a building." *Beach,* 532 A.2d at 1300; *see e.g., Thomasson v. Grain Dealers Mut. Ins. Co.,* 103 N.C.App. 475, 405 S.E.2d 808 (1991), *review dismissed,* 331 N.C. 750, 417 S.E.2d 236 (1992) (finding the term "collapse" ambiguous and rejecting the argument that the house must fall in completely before the policy would cover hidden decay and vermin damage); *Norfolk & Dedham Mut. Fire Ins. Co. v. DeMarta,* 799 F.Supp. 33 (E.D.Pa. 1992), *aff'd* 993 F.2d 225 (3d Cir.1993); *Ercolani v. Excelsior Ins. Co.,* 830 F.2d 31 (3d Cir.1987); *Royal Indemnity Co. v. Grunberg,* 155 A.D.2d 187, 553 N.Y.S.2d 527, 529 (1990); *Whispering Creek Condominium Owner Ass'n v. Alaska Nat'l Ins. Co.,* 774 P.2d 176 (Alaska 1989); *Fidelity & Cas. Co. v. Mitchell,* 503 So.2d 870 (Ala.Civ.App.1987); *Sherman v. Safeco Ins. Co.,* 716 P.2d 475 (Colo. Ct.App.1986); *Nationwide Mutual Fire Ins. Co. v. Tomlin,* 181 Ga.App. 413, 352 S.E.2d 612, 615 (1986); *United Nuclear Corp. v. Allendale Mut. Ins. Co.,* 103 N.M. 480, 709 P.2d 649 (1985); *Sherman v. Safeco Ins. Co.,* 670 P.2d 16 (Colo.Ct.App.1983); *Auto Owners Ins. Co. v. Allen,* 362 So.2d 176, 177–78 (Fla.Dist.Ct.App.1978); *Government Employees Ins. Co. v. DeJames,* 256 Md. 717, 261 A.2d 747 (1970); and *Rogers v. Maryland Casualty Co.,* 252 Iowa 1096, 1102, 109 N.W.2d 435 (1961).

■ This court concludes that the Washington Supreme Court would find the term "collapse" to be ambiguous and would adopt the construction that the majority of courts have placed upon the term "collapse." Therefore, the court finds that coverage under the Collapse provision of the policy is triggered by "any substantial impairment of the structural integrity of a building." *Beach,* 532 A.2d at 1300.

■ Based on the undisputed facts concerning the condition at Forest Lynn, the court finds substantial impairment of the structural integrity of the walkway portions of the buildings at the Forest Lynn Condominium complex. The parties' experts agree that the rotted posts must be replaced, that the rotting wood and the cracked concrete of the flooring of the walkways needs to be repaired and/or replaced and that the load-bearing capacity of the walkways has been diminished by the damage. They also agree that shoring up is necessary to temporarily maintain the walkways in a safe condition until more permanent repairs are made. The walkways are the only means of ingress and egress to the units. The units become useless without the walkways in functional condition.

Allstate argues that for the claimed damage to the walkways to be considered collapse, a municipal authority must declare them a dangerous condition, and notes that no municipal authority has issued any warnings concerning the walkways. The court finds that in the numerous cases cited above, the test for collapse most frequently used is "any substantial impairment of the structural integrity of a building." The court finds that the undisputed facts indicate the Forest Lynn Condominiums are experiencing "substantial impairment of the structural integrity," despite the absence of a municipal notice or warning.

### 2. Application of the Collapse Provision

■ Allstate argues that even if the court finds that the damage claimed at Forest Lynn constitutes collapse, the Collapse provision in the policy does not provide coverage. Allstate bases this argument on two phrases (underlined below) in the Collapse provision. Allstate relies on the following language:

We will pay for risk of direct physical loss involving collapse of a covered building or any part of a covered building *caused only by one or more of the following:*

a. fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riot; civil commotion; vandalism or malicious mischief; breakage of glass; falling objects; weight of snow, ice or sleet; water damage; *all only as insured against in this policy;*

b. hidden decay;

c. hidden insect or vermin damage;

d. weight of people or personal property;

e. weight of rain which collects on a roof;

f. use of defective materials ... if the collapse occurs during the course of construction, remodeling or renovation.

p. 3, Allstate Policy.

Allstate argues that the phrase "caused only by one or more of the following" means that for the collapse to be covered pursuant to the Collapse provision, the collapse must not only have been caused by one or more of the things listed in sub-parts a. through f., but with *no contributing causes other than* those listed in sub-parts a. through f. Allstate argues that inadequate design and construction detail allowed rain and surface water to penetrate the structures, resulting in their current damaged state. Allstate also notes that rain, surface water and inadequate design are excluded causes of damage under the Coverage A provisions which are also not contained in the sub-part a. through f. list. Allstate argues that the water damage does not qualify as water damage "as insured against in this policy" under sub-part a. because it is the type of water damage excluded under the Coverage A provision. Also, the damage is not "caused only by one or more of the following" causes listed in sub-parts a. through f. Therefore, Allstate argues that there can be no coverage under the Collapse provision.

The court finds that reading the phrases "caused only by one or more of the following" and "only as insured against in this policy" creates ambiguity, especially when read in light of the rest of the policy. The court in *Norfolk & Dedham Mutual Fire Ins. Co. v. DeMarta,* 799 F.Supp. 33 (E.D.Pa.1992) addressed a similar situation in which the insurer argued that "removal of the rain conductors [which] allowed rain to run down the walls and contributed to the collapse" created a situation in which the enumerated causes of collapse were not the only factors contributing to the collapse of the building. The *Norfolk* court noted that "[t]he fair inference is that the exposure to rain contributed to the overall condition of 'hidden decay,' which is unambiguously a covered cause of collapse under the policy" and found coverage under the collapse provision of that policy.

Additionally, if the court were to accept Allstate's argument concerning the inter-relation of language in the Coverage A provision with the language of the Collapse provision, much of the Collapse provision coverage would be rendered illusory. Coverage would be added by the Collapse provision, and yet removed again by reference to the Coverage A provisions. *See* nt. 30, p. 22, Association Memo. in Supp. of Summ.Judg.

Because under Washington State law, any ambiguity in the insurance contract must be construed in favor of the insured, the court finds that the ambiguity in the phrase "caused only by one or more of the following" should be interpreted to require that the collapse be caused by one of the enumerated factors, despite the fact that other excluded factors may have lead to the existence of the enumerated factor. In this case, hidden decay is clearly the cause of the claimed damage. As hidden decay is an enumerated cause in sub-parts a. through f. of the Collapse provision, the court finds that the damage is covered by that provision of the policy.

Because the court finds that hidden decay is the cause of the collapse of the walkways at the Forest Lynn Condominium complex, and that coverage therefore exists under the Collapse provision, it need not address Allstate's arguments that sub-part a. of the Collapse provision which states that water damage is covered "only as insured against in this policy" precludes coverage.

Finally, the court finds that the claimed collapse damage was not inevitable or certain to occur and was not a known loss prior to the inception of the Allstate policy. Allstate argues somewhat inconsistently that collapse has not yet occurred while also arguing that collapse is a certain consequence of the construction and was already a known loss before the effective date of the policy. Allstate has admitted that there is hidden decay. It is also undisputed that the extent of the problem was not known until November 1993 when invasive testing was conducted.

*C. The Coverage A Provision of the Allstate Policy*

In addition to its arguments that the Collapse provision does not provide coverage for the claimed damage, Allstate has moved for partial summary judgment on the Coverage A provision of the Policy. The court finds that the Association has not presented any

evidence which creates a material dispute of fact on the issue of coverage under the Coverage A provision. The causes of damage identified by the Association are either unsupported by evidence, and therefore insufficient to survive summary judgment, or specifically excluded under the Coverage A provision of the policy. Therefore, the court finds that there is no coverage for the claimed damage under the Coverage A provision of the policy.

### III. CONCLUSION

Based on the foregoing, the court GRANTS Forest Lynn Homeowners Association's motion for partial summary judgment, finding that there is coverage under the Collapse provision of the policy. Additionally, the court GRANTS, in part, Allstate's motion for partial summary judgment, finding no coverage under the Coverage A provision of the policy. Allstate's motion for partial summary judgment on the issue of coverage under the Collapse provision is DENIED.

Additionally, the court GRANTS both parties' motions to disregard testimony by witnesses as to the legal interpretation of "collapse;" the court GRANTS Forest Lynn Homeowners Association's motion to strike any statements made by third parties to Mr. Hart; and the court GRANTS Forest Lynn Homeowners Association's motion to strike the brief submitted with Craig Bennion's declaration. Finally, the court finds oral argument unnecessary to the disposition of this matter.

### APPENDIX

*1. The Collapse Provision of the Allstate Policy*

The Collapse provision of the Allstate policy, found on page three of the policy, reads as follows:

Collapse—Parts One and Two
We will pay for risk of direct physical loss involving collapse of a covered building or any part of a covered building caused only by one or more of the following:
a. fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riot; civil commotion; vandalism or malicious mischief; breakage of glass; falling objects; weight of snow, ice or sleet; water

damage; all only as insured against in this policy;
b. hidden decay;
c. hidden insect or vermin damage;
d. weight of people or personal property;
e. weight of rain which collects on a roof;
f. use of defective materials or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.
We will not be liable for loss to the following type of property, if otherwise covered in this policy, under items b, c, d, e, and f unless the loss is a direct result of the collapse of a covered building; outdoor radio or television antennas, including their lead-in wiring, masts or towers; awnings; gutters and downspouts; yard fixtures; outdoor swimming pools; fences; piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls; walks, roadways and other paved surfaces.
Collapse does not include settling, cracking, shrinkage, bulging or expansion.
This coverage does not increase the amount(s) of insurance provided in this policy.
p. 3, Allstate policy.

*2. The Coverage A Provision of the Allstate Policy*

The relevant portions of the Coverage A provision of the Allstate policy, found on pages seven through twelve of the policy, read as follows:

Losses Covered Under Coverage A
This policy insures your covered property for loss or damage resulting from direct physical loss, except for those Losses We Do Not Cover listed below.
Losses We Do Not Cover
1. We do not cover any loss or damage caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or even contributing concurrently or in any sequence to the loss.

. . . . .

c. Earth Movement—Water

We do not cover any loss, except to property in transit, that is caused by any of the following:

    i.  Earth movement, including but not limited to earthquake, landslide, mudflow, earth sinking, earth rising or shifting.

    •    •    •    •    •

    iii.  Flood, surface water ...

2.  We do not cover any loss or damage caused by:

    •    •    •    •    •

  b.  Weather

    We do not cover any loss to property in the open caused by rain, cold weather, frost, snow, ice or sleet.

    •    •    •    •    •

  d.  Wear and Tear, Breakdowns, Smog, Animals

    We do not cover losses caused by any of the following:

    i.  Wear and tear or any marring or scratching.

    ii.  Deterioration, defects that could not have been discovered with a reasonably thorough inspection, or any quality in the property which makes it inherently dangerous or likely to break down.

    •    •    •    •

    iv.  Rust mold, rot, contamination, temperature changes or extremes, or the wetness or dryness of the air.

    •    •    •    •    •

    vi.  Birds, insects, rodents or other animals.

    However, if one of these causes of damages then causes ... water damage covered by this policy, we will cover losses caused directly by the ... water.

  e.  Settling

    We do not cover losses caused by the settling, shrinking, cracking or expansion of swimming pools, foundations, walls, floors, roofs or ceilings.

    •    •    •    •

  m.  Collapse

    We do not cover any losses due to collapse, except as provided under Collapse—Parts One and Two. If a peril not otherwise excluded ensues on the covered premises, we will pay only for loss caused by the ensuing peril.

    •    •    •    •    •

3.  We do not cover any loss or damage caused by any of the following. However, any ensuing loss not excluded or excepted in this policy is covered.

  a.  Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1, above or to produce the loss;

  b.  Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body;

  c.  Faulty, inadequate or defective:

    i.  planning, zoning, development, surveying, siting;

    ii.  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    iii.  materials used in repair, construction, renovation or ·remodeling; or

    iv.  maintenance;

    of part or all of any property whether on or off the described premises.

pp. 7–12, Allstate policy.