Argued and submitted March 19, 2008, remanded for entry of judgment in favor of plaintiff in amount of $2,469.68; otherwise affirmed April 29, appellant's petition for reconsideration filed May 5 and response to appellant's petition for reconsideration filed May 8 allowed by opinion July 1, 2009

See 229 Or App 405, 211 P3d 325 (2009)

Kristine HENNESSY,
dba T E Hennessy Properties,
*Plaintiff-Respondent,*

*v.*

MUTUAL OF ENUMCLAW INSURANCE COMPANY,
*Defendant-Appellant.*

Benton County Circuit Court
0510037; A133592

206 P3d 1184

Todd S. Baran argued the cause and filed the briefs for appellant.

Pamela S. Hediger argued the cause for respondent. With her on the brief was Evashevski, Elliott, Cihak & Hediger, P.C.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

Landau, P. J., dissenting.

## ORTEGA, J.

Plaintiff owns a commercial building insured by defendant. Until 2005, the building's exterior was covered by a layer of a stucco product called marblecrete. In late 2003, plaintiff discovered that a piece of stucco had visibly separated from the building's underlying wall. She hired a contractor to remove the damaged stucco and filed a claim with defendant, which defendant denied. Plaintiff later replaced the remaining stucco and, again, filed a claim with defendant. After defendant denied her claims, plaintiff brought this breach of contract action, arguing that, under her insurance policy, she was entitled to recover her losses. Following a stipulated facts trial to the court, the trial court found for plaintiff and awarded her $98,859.03 for the costs of initially removing the visibly separated stucco, replacing a window damaged during the removal, and subsequently removing the remaining stucco, as well as designing and installing a new exterior. Defendant appeals, contending that the trial court erred when it denied defendant's motion for judgment as a matter of law.[1] We view the evidence in the light most favorable to plaintiff and will affirm the trial court if there is any evidence to support its findings. *See Woodbury v. CH2M Hill, Inc.*, 335 Or 154, 159, 61 P3d 918 (2003) (appellate courts review the denial of a motion for directed verdict for any evidence to support a verdict in the nonmoving party's favor). For the reasons that follow, we remand for entry of judgment in the amount of $2,469.68 and otherwise affirm.

The following facts are taken from the trial court's findings of fact and, where noted, are supplemented with information from the parties' stipulated facts. As noted earlier, plaintiff's building was covered with a stucco surface. Behind the stucco, 80 percent of the building's walls are made of concrete; the remainder are made of concrete masonry unit (CMU) blocks. In December 2003, plaintiff learned that a portion of the stucco layer that covered her building had visibly separated from the underlying concrete wall and appeared to

---

[1] Although at trial defendant labeled its motion as one for a directed verdict, because there was no jury it is more accurate to describe defendant's motion as one for judgment as a matter of law. *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 317, 129 P3d 773 (2006). Nevertheless, our standard of review is the same as that for a motion for a directed verdict. *Id.*

be in danger of falling. The damaged stucco did not actually fall to the ground, and plaintiff hired a contractor to remove it and temporarily patch that portion of the wall. She later submitted a claim to defendant for expenses related to the stucco's removal, including costs for a window damaged during the removal.

Both plaintiff and defendant sought to determine why the stucco had separated from the underlying wall. They learned that the adhesive chemical grout that had bonded the stucco to the building's walls had decayed as a result of hysteresis. Plaintiff's expert testified by deposition that hysteresis, which is common in cold, rainy environments, occurs when water that is absorbed into porous materials is subjected to a freeze-thaw cycle. Marblecrete is a particularly porous variety of stucco. As it freezes, the absorbed water expands and, as it later thaws, contracts, causing the stucco to become more porous. When water reaches the adhesive grout, repetition of the freeze-thaw cycle causes the gradual decay of the bond between the stucco and the concrete wall. Because the decay process occurs beneath the stucco, the decay is hidden from view. According to the expert, the effects of hysteresis became visible after approximately 30 years, and he estimated that the process had been ongoing at plaintiff's building for approximately that period of time.

Plaintiff's expert testified that, when he visited the building in early 2004, its exterior was "in a rather advanced state of decline" and there was a "debonding of the skin" from the concrete. However, the expert noted that, although the stucco's adhesion to the underlying concrete was "virtually non-existent," its adhesion to the underlying CMU blocks was "still viable." The expert explained that it would not have been possible to re-adhere the stucco to the underlying wall because the stucco was "coming off from the back." As a result, he explained, it was necessary to "tak[e] it off" in order to correct the problem.

In 2005, plaintiff hired contractors to remove the remaining stucco and to design and install a new exterior. At the time that the exterior was removed, none of the remaining portions of the exterior had visibly separated from the underlying concrete wall or fallen to the ground. One of the

contractors testified by deposition that, during the removal process, it became apparent that there was "very little adhesion" between the stucco and portions of the underlying wall made of concrete. He noted that the only place where the stucco adhered to the underlying wall was where the wall was made from CMU blocks. Plaintiff and defendant agree that it was "reasonable and prudent" to remove the remaining stucco.

Shortly after removing the stucco and installing a new exterior, plaintiff submitted a claim to defendant for expenses related to removing the old exterior and designing and installing the new exterior. After defendant denied plaintiff's claims, plaintiff brought this action for breach of contract, arguing that her insurance policy entitled her to reimbursement for her losses because, under the terms of her policy, she was entitled to recover for damage or direct physical loss caused by "collapse" of a building or any part of a building.

Plaintiff's policy excludes "loss or damage" caused by "collapse," except as provided in the section describing "Additional Coverage for Collapse." That section provides:

"**5.  Additional Coverages**

"* * * * *

"**d.  Collapse**

"**(1)**  We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building insured under this policy, if the collapse is caused by one or more of the following:

"**(a)**  The 'specified cause of loss' or breakage of building glass, all only as insured against in this policy;

"**(b)**  Hidden decay;

"**(c)**  Hidden insect or vermin damage;

"**(d)**  Weight of people or personal property;

"**(e)**  Weight of rain that collects on a roof;

"**(f)**  Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation.

> However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in **d.(1)(a)** through **(d).(1)(e)**, we will pay for the loss or damage even if use of defective material or methods in construction, remodeling or renovation, contributes to the collapse."

(Boldface in original.) Thus, although loss or damage caused by "collapse" is generally excluded, plaintiff may recover for direct physical loss or damage caused by "collapse" if she proves that (1) a specified condition, such as hidden decay, (2) caused "collapse" of a building or part of a building, and (3) the collapse resulted in direct physical loss or damage to covered property. *See Employers Insurance of Wausau v. Tektronix, Inc.*, 211 Or App 485, 509-12, 156 P3d 105, *rev den*, 343 Or 363 (2007) (under Oregon law, the insured has the burden of proving the applicability of an exception to an exclusion).

At trial, the parties' primary dispute involved whether the stucco's visible separation from the underlying concrete wall in December 2003 was within the plain meaning of the term "collapse." Defendant conceded that, if the stucco's visible separation from the underlying wall was a "collapse," plaintiff was entitled to coverage for the costs of removing and repairing the damaged portion of stucco. Nevertheless, defendant asserted that plaintiff was not entitled to recover the costs of removing and replacing the remaining stucco, because there was no evidence that that stucco was damaged because of the collapse. The trial court disagreed with defendant and found that the hidden decay of the adhesive grout through hysteresis caused a portion of the exterior stucco to visibly separate from the underlying concrete wall and collapse, damaging plaintiff's building. Accordingly, the court ruled that all of plaintiff's damages were covered under the policy and, as noted, defendant appeals.

On appeal, the parties again focus on whether the stucco's separation from the underlying concrete wall constituted a collapse. In its first assignment of error, defendant argues that the trial court erred when it denied defendant's motion for judgment as a matter of law because the visible separation of a portion of stucco from the underlying wall was

not a "collapse" within the policy's meaning. According to defendant, the plain meaning of the term demonstrates that "collapse" occurs when an object "succumbs to the law of gravity and totally falls down or apart." Despite acknowledging that a portion of stucco visibly separated from the underlying wall, defendant contends that, because the stucco "had not become completely detached and * * * was still resisting the pull of gravity," there was no collapse. Defendant argues that such a construction of the term comports with the decisions of other jurisdictions that have interpreted similar policy language and urges this court to adopt that construction as well.[2] Defendant again concedes that, if the 2003 event was a collapse, plaintiff is entitled to recover for that collapse, but also reiterates its contention that the damage caused by that collapse did not necessitate the removal and replacement of the remaining stucco—that is, the damage to the remainder of the exterior was not caused by the collapse. Plaintiff does not offer an alternative construction of the term "collapse," but instead argues that the term is ambiguous and should be construed against defendant. Defendant also asserts a second assignment of error, contending that it was entitled to judgment as a matter of law because plaintiff's claim was barred by the policy's limitations clause.

■ We begin with defendant's first assignment of error. The policy does not define "collapse" other than to say that it does not include "settling, cracking, shrinking, bulging, or expansion." Accordingly, we turn to the plain meaning of the term "collapse." *See Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469-71, 836 P2d 703 (1993) (describing the three-step interpretive method for insurance contracts). When used as a noun, as it is in plaintiff's policy,

---

[2] *See generally Higgins v. Connecticut Fire Insurance Company*, 163 Colo 292, 296-97, 430 P2d 479, 480-81 (1967) (concluding that the term "collapse" was not ambiguous and that the plaintiff's home, which had small cracks in the walls and foundation, had not suffered from "collapse" because, among other things, there had been "no falling in or loss of shape of the building," but noting a split of authority as to whether "collapse" is ambiguous within the meaning of the policy); *Northwestern Mut. Ins. Co. v. Bankers Union L. Ins. Co.*, 485 P2d 908, 909-10 (Colo App 1971) (following *Higgins*); *Baker v. Whitley*, 87 NC App 619, 620-21, 361 SE2d 766, 767 (1987) (concluding that there was no "collapse" because the plaintiff's home did not fall down completely or cave in).

the definition of "collapse" includes: "**2** : the action of collapsing : the act or action of drawing together or permitting or causing a falling together ‹the cutting of many tent ropes, the ~ of the canvas * * *›." *Webster's Third New Int'l Dictionary* 443 (unabridged ed 2002). "Collapsing" is a verb, whose root means, among other things, "to break down completely," "to fall or shrink together abruptly and completely," and "to cave in, fall in, or give way : undergo ruin or destruction by falling or as if by falling down." *Id.*

Two of the preceding definitions support defendant's contention that a collapse involves a complete and total falling down. However, the remaining definition, "to cave in, fall in, or give way," is not as restrictive. For example, the verb "fall" can mean, among other things, "to descend by the force of gravity when freed from suspension or support" and "to drop suddenly and involuntarily." *Id.* at 817. Nothing in those definitions requires a total or complete fall. Rather, they require only that an object, acting under the force of gravity, descend or drop involuntarily.

Thus, although "collapse" refers to a situation where an object, acting under the force of gravity, descends or drops, it is not clear that the definition requires a total or complete descent. The policy's definitional exclusion is also unhelpful. As noted above, that provision specifies that various conditions, such as "settling, cracking, shrinkage, bulging or expansion" do not constitute collapse under the policy. The exclusion establishes only that, to the extent that the stucco's behavior consisted of those conditions, coverage is excluded. It does not answer the question whether, as used in the policy, a collapse must be total or complete.

Nor does the remainder of the policy contain any language that is helpful in resolving that question. Accordingly, we construe the policy against defendant, *Hoffman*, 313 Or at 470-41, and conclude that, as used in the policy, "collapse" does not require a complete falling down. Rather, "collapse" requires only that an object fall some distance.[3]

---

[3] That construction does not comport with the construction adopted by other jurisdictions, as indicated above, 228 Or App at 192 n 2. Although those courts based their decisions on language somewhat similar to the language at issue in this case, they applied a more limited dictionary definition of "collapse," and none of

The trial court found that, in 2003, a portion of the stucco collapsed when it "abruptly separate[d] from the underlying wall and * * * change[d] shape." Evidence in the record supports that conclusion. Plaintiff's husband testified by deposition that, when he examined the building, he observed that a portion of the stucco "was no longer holding onto the wall" and "was just hanging there." Because plaintiff's building was damaged as a result of a collapse in 2003, we agree with the trial court's conclusion that plaintiff was entitled to recover the $2,469.68 in costs related to removing and repairing that portion of the building's exterior.[4]

■       However, we agree with defendant that the record contains no evidence that, because of that collapse, the removal and replacement of the remaining stucco in 2005 was covered under the policy. The removal and replacement work sought to repair damage that was not "caused by collapse" within the meaning of the policy, but rather was caused by hysteresis. The record amply demonstrates that, although the stucco on plaintiff's building was no longer attached to the underlying walls, it had not moved or fallen and that, consequently, the repair of that stucco aimed to address the further damage caused by hysteresis. Although the parties agree that it was "reasonable and prudent" to remove that portion of the stucco, the damage that necessitated that removal was caused by hysteresis; they presented no evidence that the damage resulting in the removal was caused by the collapse of the other portion of the stucco when it visibly separated from the building's underlying wall. Accordingly, the trial court erred when it awarded plaintiff damages for the costs of the 2005 removal and replacement of the stucco exterior.

■       In its second assignment of error, defendant argues that the trial court erred when it denied defendant's motion for judgment as a matter of law because plaintiff's claim was barred by the policy's limitations clause, which provides:

---

those courts applied the interpretive principles that we are required to apply under *Hoffman*. As a result, the persuasive value of those decisions is limited.

    [4] The trial court also awarded damages to plaintiff for a window that was damaged during the removal of the stucco. Because defendant does not challenge that award, we affirm the trial court's award of damages for that incident.

### "4.  Legal Action Against Us

"No one may bring a legal action against us under this insurance unless:

"\* \* \* \* \*

"**b.**   The action is brought within 2 years after the date on which the direct physical loss or damage occurred."

(Boldface in original; emphasis added.) Defendant contends that plaintiff's loss occurred when the process of hysteresis began 30 years ago and that plaintiff's action therefore was not brought within two years of the occurrence of that loss.

Defendant's argument assumes that the trial court found that the deterioration of the underlying grout between the exterior stucco and the underlying wall constituted the collapse. That assumption is incorrect. As we have noted, the trial court found that that deterioration, the result of hysteresis, eventually caused a "portion of the stucco exterior surface to abruptly separate from the underlying concrete" in 2003 and that that separation constituted a collapse, which damaged plaintiff's building. Plaintiff filed this action one year later. Accordingly, the trial court correctly denied defendant's motion for judgment as a matter of law on this ground.

Remanded for entry of judgment in favor of plaintiff in amount of $2,469.68; otherwise affirmed.

**LANDAU, P. J.,** dissenting.

I respectfully disagree with the majority that what is essentially a crack between a piece of stucco and the building to which it is adhered is a "collapse" of that stucco. I do not find any support in the dictionary definitions on which the majority relies for its conclusion that an impending—but, as yet, unaccomplished—collapse is itself a collapse. Moreover, the policy itself makes plain that "settling, cracking, shrinkage, bulging or expansion" do not constitute a "collapse." Given that such settling, cracking, shrinkage, bulging, and expanding is precisely what happened to the stucco in this case as a result of the process of hysteresis, I do not understand how the majority's holding can be reconciled with the terms of the policy.

I do agree, for the reasons cogently stated by the majority, that, if there was any "collapse," there is no evidence that it caused damage to the rest of the building. But, because I do not agree that such a collapse occurred, I would not reach that issue.